**NICE et al., Appellants,**

**v.**

**CITY OF MARYSVILLE et al., Appellees.**

[Cite as *Nice v. Marysville* (1992), 82 Ohio App.3d 109.]

Court of Appeals of Ohio,
Union County.

No. 14–92–11.

Decided Aug. 21, 1992.

110

*Enz, Jones & Legrand, Jeffrey A. Dittmer* and *Sheila M. Sinno,* for appellants.

*Michael J. Grigsby,* Marysville Law Director, for appellee city of Marysville.

*Allen, Howard, Yurasek & Merklin* and *Jeffrey A. Merklin,* for appellees Raymond and Mary Noland.

*Cannizzaro, Fraser & Bridges* and *Don W. Fraser,* for appellee Betty Lee.

*Lane, Alton & Horst* and *Gregory D. Rankin,* for appellee Righter Company.

*Robert D. Erney,* for appellee the Leader Mortgage Company.

HADLEY, Presiding Judge.

Plaintiffs–Appellants, Curtis A. and Rebecca Nice, appeal from the judgment in the Union County Court of Common Pleas granting summary judgment for defendants-appellees, city of Marysville ("the city") and Raymond and Mary Noland, against appellants.

On March 14, 1989, the Nices purchased the real property, with a single-family dwelling, at 257 North Cherry Street in Marysville from the Nolands. The controversy that concerns this property involves a city storm sewer that lies underneath the Nice residence. During the negotiations prior to the Nices' purchasing this home, both the realtor and the previous owner, Raymond Noland, relayed to the Nices that the sewage was treated by a septic tank. However, a soil pipe in the first level bathroom went through the basement ceiling to the basement floor, which indicated that the sewage was not treated by a septic tank. Also, the Nices were unable to locate a septic tank on their premises. The Nices indicated in their affidavits that they did not know the continuum of the soil pipe, which began in the bathroom and ran through the basement floor.

In March 1990, the Nices contacted the Righter Company to construct a sanitary sewer line, which required some digging on the Nices' property. Between April 1, 1990 and May 20, 1990, the Nices' basement experienced flooding to depths of one foot. On June 8, 1990 and June 14, 1990, their basement flooded to depths of at least five feet. On June 14, 1990, the basement floor experienced an upheaval which exposed the city's storm sewer line underneath.

After the floodings in June, the Nices contacted the city and notified it of the flooding problems with the storm sewer. The Nices claim that from June 1990 until they filed their seconded amended complaint, the city's storm sewer continued to cause flooding to their basement.

In June 1991, appellants initiated this action, alleging claims of negligence, continuing trespass, taking of property without just compensation, and negligent and/or intentional mental and emotional distress, against the city. The appellants also exposed the Nolands to claims of breach of the warranty deed and negligent and/or intentional infliction of emotional distress. Appellants further claimed that Righter was liable to them for negligence and negligent and/or intentional infliction of emotional distress.

Appellants city and the Nolands filed for summary judgment. On January 24, 1992, the trial court filed its journal entry, granting summary judgment for the city against the Nices, granting summary judgment for the Nolands against the Nices, and denying summary judgment for the Nices against both

the city and the Nolands. The trial court determined that the claims against Righter were still outstanding; however, there was no just reason for delaying the judgments rendered therein. Thus, this appeal was timely filed by appellants.

### Assignment of Error No. 1

"The trial court erred in denying plaintiffs' motions for summary judgment against defendants City of Marysville and Noland and in granting the motions for summary judgement [*sic*] of defendants City of Marysville and Noland in that the court's decision is not supported by evidence in the record."

### Assignment of Error No. 2

"The trial court erred by holding that defendant City of Marysville held a prescriptive easement to the plaintiffs' premises."

The trial court found that the city held a prescriptive easement, and, therefore, granted the city's motion for summary judgment on that claim. Assignments of error one and two argue this issue and, therefore, we will address these two assignments together.

■ A motion for summary judgment can only be granted if there are no genuine issues of material fact, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, and the moving party is entitled to judgment as a matter of law. Civ.R. 56. Summary judgment should not be granted where conflicting facts and inferences exist. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378.

■ It is uncontradicted that there is no recorded easement in appellants' chain of title that indicates that the city had a storm sewer underneath their basement. Thus, to avoid removal of the storm sewer, the city claimed that it had a prescriptive easement and did not need to remove the storm sewer. A municipal corporation or city may acquire title by adverse possession, notwithstanding the constitutional limitations which require a city or municipal corporation to compensate a private party taken for public use. *State ex rel. A.A.A. Investments v. Columbus* (Apr. 26, 1984), Franklin App. No. 83AP–450, unreported.

■ The party claiming a prescriptive easement must prove that the property is being used in a manner that is (a) open, (b) notorious, (c) adverse to the landowner's property rights, (d) continuous, and (e) for at least twenty-one years. *J.F. Gioia, Inc. v. Cardinal Am. Corp.* (1985), 23 Ohio App.3d 33, 23 OBR 76, 491 N.E.2d 325. The elements of open and notorious appear to be substitutes for actual knowledge. 2 Ohio Jurisprudence 3d (1977), Adverse

Possession, Section 22. Other cases permit a prescriptive easement to be shown by constructive knowledge, if it is a matter within common knowledge. *Smith v. Krites* (1950), 90 Ohio App. 38, 46 O.O. 360, 102 N.E.2d 903. Still other cases permit prescriptive easements to be shown if the owner acquiesced in the adverse use of his property. *Pierce v. Cherry Valley Farms* (1945), 76 Ohio App. 58, 31 O.O. 381, 63 N.E.2d 46.

We first turn to the first two elements of a prescriptive easement, open and notorious. Appellants argue that the city's storm sewer was not open and notorious because it was buried below the ground. The city argues that because a soil pipe went through appellants' basement ceiling and through the basement, then necessarily it was connected to the city's storm sewer. It also argues that the only time these elements need be proven is at the time the person claiming the easement began his adverse use. The trial court found that "all owners" since the storm sewer's installation "were on actual notice that the bathroom sewer pipe was hooked up into the city storm sewer."

We disagree with the trial court and the city concerning its arguments relating to open and notorious. Most notable is the direct contradiction of the trial court's assertion that *all* owners and occupants had *actual* notice that the bathroom soil pipe hooked up into the city's storm sewer. Both of the Nices stated in their affidavits attached to their motion for summary judgment that they did not know that the soil pipe was connected to the city's storm sewer until after a contractor excavated the basement floor in November 1990. The trial court is not to determine the veracity of an affidavit in a motion for summary judgment; rather, it is to determine whether, after viewing the evidence most favorably against the nonmoving party, genuine issues of material fact exist. The trial court used its assumption that all owners were on notice as the basis for determining that the Nices had notice of the city's storm sewer. However, because there was a genuine issue of material fact concerning what the soil pipe from the first floor bathroom was hooked up to, the trial court's grant of summary judgment was improper on that basis.

We also disagree with the city's assertion that only the original owner must have known of and seen the city's storm sewer being put in beneath the residence. This reasoning does not lend support to the theory of prescriptive easements. Society favors recorded conveyances of title and uses rather than oral promises. *J.F. Gioia, Inc., supra.* Therefore, when a party claims that he is entitled to a certain use that is not recorded by prescriptive easement, the law generally requires him to prove such a claim by a heightened burden, that of clear and convincing evidence. *J.F. Gioia, supra; McInnish v. Sibit* (1953), 114 Ohio App. 490, 19 O.O.2d 476, 183 N.E.2d 237; but, see, *Demmitt*

*v. McMillan* (1984), 16 Ohio App.3d 138, 16 OBR 146, 474 N.E.2d 1212. Thus, it not logical to assume that such elements could be proved piecemeal, that at one time within the twenty-one period, someone saw the use, at another time, someone believed such a use to be adverse to his property interests, and so on. Rather, the elements of prescriptive easements must be continuous, open and notorious and adverse for twenty-one years. Thus, the appellees have the burden of proving that the elements of a prescriptive easement existed for twenty-one years.

■ There is also a factual issue whether the Nices had constructive knowledge of the city's storm sewer. Is it a matter within common knowledge that a soil pipe from the bathroom must necessarily and only connect to a storm sewer? Moreover, that the storm sewer be owned by the city? Finally, no party addressed whether the Nices could have acquiesced in the city's storm sewer, thereby satisfying the elements of open and notorious.

■ The trial court did not specifically address the issue whether the use of the storm sewer by the city was adverse. However, there being no interference with or inconvenience to the Nices' use of their home by the buried storm sewer until the Nices wanted to put in a sanitary sewer line implies that a genuine issue of material fact exists as to whether or not the city's use was adverse. See *Elster v. Springfield* (1892), 49 Ohio St. 82, 30 N.E. 274. Further, without the resolution that the use was known to the Nices, it is impossible to discern whether they permitted, acquiesced, or were hostile to this use.

Appellants have not provided any evidence which contradicts the remaining two elements, that the use was continuous and for a period of twenty-one years. Therefore, we will not address these elements. However, because of the issues raised above as to the remaining elements, we sustain appellants' Assignments of Error Nos. 1 and 2.

### Assignment of Error No. 3

"The trial court erred in denying plaintiffs an opportunity to prove damages where the court found an encumbrance existed upon plaintiffs' property."

Initially, we note that appellants do not assign as error the measure of damages relied upon by the court in its determination that appellants were not entitled to damages against the Nolands. Their argument focuses on the fact that the trial court refused to grant them a hearing on the amount of damages, after a finding that the prescriptive easement constituted an encumbrance upon their property. However, we find no merit to this assigned error.

To prevent summary judgment from being granted to the Nolands against appellants on the Nolands' motion for summary judgment, appellants must have presented some evidence or proof of the amount of damages as claimed in their complaint. A motion for summary judgment requires the party opposing the motion to produce evidence on any issue for which that party bears the burden of proof at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Thus, it is not enough to defeat a motion for summary judgment that one claims that he is damaged in a certain amount. In order to defeat a motion for summary judgment, the opposing party must present some evidence to raise a genuine issue of material fact. If evidence is not presented to support a nonmoving party's claim, summary judgment is properly granted against him. Therefore, since appellants presented no evidence in their motion for summary judgment or motion in opposition to the Nolands' motion for summary judgment on how they arrived at their prayer for relief in their complaint, the Nolands' motion for summary judgment was properly granted. Further, the trial court properly ruled upon this issue in granting the motion for summary judgment and not permitting any additional hearings. There was no need for such additional hearings, when the issues of liability and damages were raised in the motions for summary judgment and should properly have been addressed therein.

Since there was no evidence presented by appellants in their motion for summary judgment or in their motion in opposition to the Nolands' motion for summary judgment, the trial court properly ruled that damages should not be awarded to appellants. This assignment of error is without merit.

### Assignment of Error No. 4

"Whether the trial court erred by holding the defendant City of Marysville not liable to the plaintiffs for damages resulting from defendant City of Marysville's negligence."

Appellants argue that the trial court improperly held that they did not prove the city was liable for negligence in their motion for summary judgment. The city argues that it could not be liable to the Nices in negligence because no duty was owed by the city to the Nices. The trial court determined that since appellants had not proven negligence, summary judgment was granted to the city.

To sustain a claim of negligence, one must show the existence of a duty, a breach of the duty, proximate causation, and an injury resulting from the breach. See *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75,

15 OBR 179, 472 N.E.2d 707. Thus, the Nices must first show that there was a duty owed to them by the city.

R.C. Chapter 2744 states the law of political subdivisions' tort liability. R.C. 2744.02 states that a municipal corporation can be liable for negligence if the incident complained of occurred during the performance of a proprietary function. The city argues that R.C. 2744.02 does not apply because it was not in effect in 1946. However, the common-law rule was the same as the now codified doctrine of sovereign immunity enunciated in R.C. 2744.02.

In *Portsmouth v. Mitchell Mfg. Co.* (1925), 113 Ohio St. 250, 255, 148 N.E. 846, 847, the Supreme Court held:

"The weight of authority holds that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure to *construct* sewers. However, the weight of authority is equally decisive in holding that the *operation and upkeep* of sewers is not a governmental function, but is a ministerial or proprietary function of the city." (Emphasis added.)

The same rule is codified in R.C. 2744.01(C)(2)(*l*) and 2744.01(G)(2)(d) currently. Similarly, the codified rule of law, R.C. 2744.02(B)(2), which makes political subdivisions liable for the negligent performance of proprietary functions, is merely a recitation of the common-law rule:

"The obligation to repair is purely ministerial. When, therefore, a municipal corporation assumes the control and management of the sewer or drain which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect." (Citations omitted.) *Portsmouth* at 255, 148 N.E. at 847.

A similar statement was the rule of the Supreme Court in *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 137, 39 O.O. 441, 443–444, 87 N.E.2d 243, 246:

"A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * *. The municipality becomes liable for damages caused by its negligence in this regard *in the same manner and to the same extent as a private person* under the same circumstances." (Citations omitted and emphasis added.)

Therefore, not only did a duty by the city exist immediately after the construction of the sewer, but also at the time of the flooding of the Nices' basement in 1990.

The remaining elements include a breach of that duty, proximate causation, and injuries. Based upon the Nices' complaint and William Burris' affidavit, a genuine issue of fact remains as to who or what caused the flooding to the Nices' basement in 1990, thereby leaving in doubt the elements of breach and proximate causation. Evidence has been presented that there was damage to the city's storm sewer, that the damage may have been the result of the city's failure to inspect and maintain the sewers, and that excessive flooding occurred in appellants' basement whereunder the city's storm sewer is buried. This is sufficient evidence to maintain a claim of negligence. Therefore, we disagree with the trial court that appellants "failed to show negligence." Further, we disagree with the trial court's reasoning that because the excavating contractor could not conclusively state who or what damaged the city's storm sewer causing the basement to flood, this evidenced that reasonable minds could only conclude that summary judgment was proper for the city. Rather, the fact that it has not been conclusively determined who or what damaged the city's storm sewer is a genuine issue of material fact, as the city could be found negligent based on inferences viewed most favorably to appellants.

Therefore, Assignment of Error No. 4 is sustained.

### Assignment of Error No. 5

"The trial court erred by holding that defendant City of Marysville may constitutionally take property without paying just compensation to the property owner."

Appellants argue that because the trial court granted summary judgment for the city on the basis that the city had a prescriptive easement, this was a taking of private property for which appellants are entitled to be compensated. Based upon the substantive context of this assignment, in conjunction with our rulings on Assignments of Error Nos. 1, 2, and 4 and because the trial court has not yet ruled on this issue, we decline to rule on this assignment of error.

### Assignment of Error No. 6

"The trial court erred by ruling upon all pending motions for summary judgment prior to its court reporter completing the transcripts of the depositions of Ken Kraus and Joel Allen."

Appellants base this argument on the fact that the court reporter did not finish the requested depositions before the summary judgment hearing. We find appellants' arguments unpersuasive. The duty to ensure that the depositions were transcribed and filed before the summary judgment hearing was upon appellants' counsel. While we agree that the officer who is to transcribe the deposition must do so upon request, Civ.R. 30(F), the duty to inform the court that depositions are not yet completed or to move for a continuation on a hearing or trial date is upon counsel, not the court reporter. Civ.R. 32(A) requires that if a deposition is intended to be used as evidence in trial or a hearing, including a summary judgment hearing,[1] it must be filed one day prior to the hearing or trial. If the court reporter does not forward the depositions to counsel the day before they are needed, this alerts counsel prior to hearing or trial deadlines that depositions are not completed and, therefore, they must move the court for a continuation of the hearing or trial if they still want the deposition used as evidence in the hearing or trial.

Because appellants' counsel did not notify or move the court for a continuation, we find this assignment of error without merit.

For the above-stated reasons, Assignments of Error Nos. 3 and 6 are overruled; Assignment of Error No. 5 is not ripe for appeal; and, Assignments of Error Nos. 1, 2, and 4 are sustained and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

EVANS and THOMAS F. BRYANT, JJ., concur.

---

1. Staff Note, Civ.R. 32(A).