EANNOTTIE, Appellant,

v.

CARRIAGE INN OF STEUBENVILLE et al., Appellees.

[Cite as *Eannottie v. Carriage Inn of Steubenville,* 155 Ohio App.3d 57, 2003-Ohio-5310.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 41.

Decided Sept. 29, 2003.

58

Shapero & Roloff and Neal E. Shapero, for appellant.

King, Hargrave, Scurti & Jack and Otto A. Jack, for appellee.

DeGenaro, Judge.

{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, Helen Eannottie, appeals from the judgment of the Jefferson County Court of Common Pleas granting summary judgment in favor of appellee, Trinity Health System. This case involves the discovery of a sponge placed and then left inside Eannottie's wound sometime after she had surgery to remove a sarcoma. The issues we must resolve are (1) whether the possibility that several parties could have placed and then left the sponge in the wound created a genuine issue of material fact; (2) whether Eannottie was required to prove with expert testimony who placed and then left the sponge to survive summary judgment; (3) whether expert testimony was required to prove with reasonable medical certainty that Trinity was responsible for placing and leaving the sponge to survive summary judgment; and (4) whether expert medical testimony was necessary to assist the jury in making their decision.

{¶ 2} Because almost all cases involving foreign objects left inside a patient after medical treatment are within the understanding of the jury, no expert testimony was required in this case. Moreover, Eannottie was not required to prove who placed the sponge inside her wound because that clearly would be a question for the trier of fact. Because several genuine issues of material fact remain undecided in this case, namely who left the sponge in Eannottie's wound,

the judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded for further proceedings.

## Facts

{¶ 3} On July 17, 1997, Dr. Mark Goodman performed surgery to remove a sarcoma. Two additional surgeries followed. On August 12, 1997, Eannottie was discharged to the Carriage Inn, a rehabilitation center, where she stayed until October 6, 1997. Eannottie was discharged to her home, where she began receiving wound care from Trinity, a company that provides in-home nursing. Eannottie returned to Dr. Goodman for office visits five times after she had been discharged to her home.

{¶ 4} At all times, Eannottie had a wound that was being cared for by all of the above-mentioned parties. Despite all of the care given to Eannottie's wound, it remained open and continued to drain. Consequently, Eannottie went to Dr. Howard Eddington, a physician at the Wound Healing Clinic, for additional treatment. On April 28, 1998, while performing a debridement surgery upon her wound Dr. Howard discovered a 4″ by 4″ sponge.

{¶ 5} On October 12, 1999, Eannottie filed a complaint sounding in professional negligence against Trinity based upon a negligently placed foreign object found inside her surgical wound. After discovery, Trinity filed a motion for summary judgment, claiming (1) Eannottie had failed to provide expert testimony that Trinity, beyond a reasonable degree of medical probability, fell below the appropriate standard of care in treating Eannottie; (2) Eannottie failed to state a specific standard of care that Trinity allegedly fell below; and (3) summary judgment was proper because experts for each party agreed that neither could identify when the sponge was placed inside Eannottie or who placed it there. After reviewing the evidence, the trial court granted summary judgment in favor of Trinity.

{¶ 6} Eannottie has presented this court with five assignments of error. For the sake of clarity, these assignments will not be addressed in the order they were presented. Rather, we will first address the assignments of error that deal with the trial court's evidentiary rulings made prior to its summary dismissal of the case.

## Unnecessary Expert Testimony

{¶ 7} As her second and third assignments of error, which will be addressed together, Eannottie asserts:

{¶ 8} "The trial court committed reversible error in determining that appellant required expert testimony to assist the trier of fact in establishing who caused appellant's injury."

{¶ 9} "The trial court committed reversible error by requiring appellant to present expert testimony on who caused appellant's injury based upon a reasonable degree of medical probability."

{¶ 10} The trial court was correct in barring the testimony of Dr. Snow albeit for a different reason than that given by the trial court. The trial court concluded that Snow was merely testifying as to the mathematical probability that the Trinity nurses were responsible for placing the sponge inside Eannottie and was therefore giving improper testimony for a medical expert. And although we agree with the trial court's determination, an additional and perhaps controlling reason Snow's testimony should be excluded is that he would be testifying as to matters within the understanding of the jury. This distinction is important because on remand of this case we want it to be clear that no expert testimony may be required on this issue due to the unique facts of this case.

{¶ 11} The admissibility of expert testimony is governed by Evid.R. 702:

"A witness may testify as expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.  * * *."  Id.

{¶ 12} Admission of expert testimony is within the sound discretion of the trial court whose decision will not be reversed absent an abuse of discretion. *Scott v. Yates* (1994), 71 Ohio St.3d, 219, 221, 643 N.E.2d 105; *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444.

{¶ 13} An abuse of discretion is more than an error of law or judgment but implies an unreasonable, unconscionable, or arbitrary attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 14} In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish (1) the prevailing standard of care; (2) a breach of that standard; and (3) that the nurse's negligence was the proximate cause of the patient's injury. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 580–581, 613 N.E.2d 1014. However, "[i]n a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required." *Berdyck,* 66 Ohio St.3d at 580–581, 613 N.E.2d 1014. See *Wood v. Elzoheary* (1983), 11 Ohio App.3d 27, 29, 11 OBR

40, 462 N.E.2d 1243 ("Proof that the liability event caused the claimed injury need not include expert opinion testimony when the causal relationship is a matter of common knowledge."). See *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916 (metallic forceps and nonabsorbent sponge left inside plaintiff's abdomen in that case was deemed negligent as a matter of law).

{¶ 15} Thus, expert testimony is not admissible if the opinion expressed is within "the ken" or range of knowledge of the jury. *State v. Koss* (1990), 49 Ohio St.3d 213, 216, 551 N.E.2d 970. Such testimony is only admissible if it is "sufficiently beyond common experience." *State v. Buell* (1986), 22 Ohio St.3d 124, 131, 22 OBR 203, 489 N.E.2d 795.

{¶ 16} Here a 4″ × 4″ sponge was left inside Eannottie's wound. Trinity does not contest the fact that the sponge should not have been left inside the wound, nor do they contest the fact that doing so would be negligent. Instead, they claim that Eannottie was required to present expert medical testimony proving that they were in fact the party who placed it there.

{¶ 17} There is an admission in this case by everyone concerned that leaving the sponge inside the patient is an act of negligence. In dispute, however, is the correct party responsible for the negligence. The question of who placed the sponge inside Eannottie's wound is not a matter outside the understanding of a jury to decipher. Two physicians, Dr. Snow and Dr. Priebe, both testified in their depositions that they could not tell from the medical records when or by whom the sponge was placed inside Eannottie's wound. In fact, Priebe testified that there was no way to determine within a reasonable degree of medical certainty when and who placed the sponge inside the wound. The record reflects that the reason they cannot come to any definite conclusion is because the medical negligence is a given; finding the responsible party is an issue of credibility that must be decided by the jury. Accordingly, the trial court erred by requiring Eannottie to present expert medical testimony on this issue. Eannottie's second and third assignments of error are meritorious.

### Improper Expert Testimony

{¶ 18} As her fourth and fifth assignments of error, Eannottie asserts:

{¶ 19} "The trial court committed reversible error in determining that appellant's expert's testimony was incompetent to assist the trier of fact in establishing who caused appellant's injury."

{¶ 20} "The trial court committed reversible error by failing to accept appellant's expert's testimony that was based in part upon his use of statistics and mathematics in determining that appellee caused appellant's injury."

{¶ 21} Snow testified in his deposition that it was probable that the Trinity nursed placed the sponge inside Eannottie, stating:

{¶ 22} "My opinion is based on the law of averages that Trinity came out for six months twice a day, 180 days twice a day, 360 times that someone changed the wound, and the wound was changed just a small fraction of that by anyone else. So the probability is that it came from Trinity based on those numbers. Everyone is saying they didn't do it. Well, the four-by-four was found in the wound, so someone did it."

{¶ 23} As discussed above, Evid.R. 702 only permits an expert to testify about matters beyond the knowledge or experience possessed by lay persons. Thus, any expert testimony on this particular matter, namely who left the sponge in the wound, regardless of the witness's area of expertise would be inadmissible. *Koss,* 49 Ohio St.3d at 216, 551 N.E.2d 970, citing *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. Thus, the trial court did not abuse its discretion in finding the testimony to be inadmissible although it gave an incorrect reason for doing so. Eannottie's fourth and fifth assignments of error are meritless.

### Summary Judgment

{¶ 24} As her final assignment of error, Eannottie states:

{¶ 25} "The trial court committed reversible error in granting appellee's motion for summary judgment because a genuine issue of material fact exists regarding who caused appellant's injury."

{¶ 26} An appellate court reviews de novo a trial court's decision to grant summary judgment. *Wilson v. Lafferty Volunteer Fire Dept.* (Nov. 29, 2001), 7th Dist. No. 00 BA 29, at 6, 2001 WL 1530952, quoting *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Neither the reviewing court nor the trial court " 'may weigh the proof or choose among reasonable inferences in deciding whether summary judgment should be granted.' " *Wilson* at 7, quoting *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198.

{¶ 27} Under Civ.R. 56(C), summary judgment is not proper unless the trial court determines that (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and viewing the evidence most strongly in favor of the opposing party, the conclusion is adverse to that party. *Gross v. Fizet* (Dec. 18, 2001), 7th Dist. No. 00–C.A.–250, at 7, 2001 WL 1667864, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 28} Initially, as the party seeking summary judgment, Trinity must inform the trial court of the basis for its motion and identify the parts of the record that demonstrate that it is entitled to judgment as a matter of law. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Trinity must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that the trial court is to consider before rendering summary judgment. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 29} When the initial burden is met, the opposing party must then counter by demonstrating that there are genuine issues for trial. *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470, 474, 688 N.E.2d 563. To withstand summary judgment, Eannottie is required to specifically place before the court facts that support the elements of the claim she intends to prove. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. The trial court must then examine the record in a light most favorable to the party opposing summary judgment. Civ.R. 56(C). Only when such an examination reveals no disputed factual issues is summary judgment a proper device for resolving a case. *Nice v. Marysville* (1992), 82 Ohio App.3d 109, 116–117, 611 N.E.2d 468.

{¶ 30} Eannottie's complaint sounds in professional negligence. "In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury. * * * In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required." *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 580–581, 613 N.E.2d 1014.

{¶ 31} To prevail against a defendant's motion for summary judgment in a negligence case, a plaintiff must first identify the extent of the duty that defendant owed him. The evidence must be sufficient, when considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached and that breach of that duty was the proximate cause of the plaintiff's injury. *Sanders v. Anthony Allega Contrs.* (Dec. 30, 1999), 8th Dist. No. 74953, 1999 WL 1271740, citing *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 394, 642 N.E.2d 657.

{¶ 32} However, in the present case, Trinity claims that in order to survive summary judgment, Eannottie must also prove with some level of certainty by an expert that Trinity was in fact the party that placed the sponge in her wound. This court addressed a similar issue and came to the opposite conclusion in *Coney v. Youngstown Metro. Hous. Auth.* (Aug. 23, 2002), 7th Dist. No. 00–C.A.–251, 2002 WL 1965321. In *Coney*, a case arising out of a child's trip and fall over a

utility pole anchor, this court concluded that genuine issues of material fact existed as to whether the anchor belonged to Ohio Edison and whether it had possession and control over the anchor. *Coney* is similar to the case at bar in that the plaintiff in *Coney* initially sued three utility companies that used the pole because she could not identify which utility company was responsible for the anchor attached to the pole that caused the injury. Although some of the other utility companies who made use of the pole were dropped from the lawsuit, this court still concluded that genuine issues of material fact existed as to whether the in-ground anchor that supported the pole belonged to Ohio Edison.

{¶ 33} In its entry granting summary judgment for Ohio Edison, the trial court in *Coney* stated, "There is no proof offered by Plaintiff, either circumstantial or direct in character, that would allow any reasonable minds to conclude that the anchor in question was owned, maintained, used, or installed by Ohio Edison nor that Ohio Edison had any duty regarding such anchor." Id. at ¶ 9.

{¶ 34} Despite the fact that all three utility companies denied owning the anchor, this court reversed the trial court's decision, stating that "sufficient evidence exists so that reasonable minds could find that Ohio Edison was the owner of the anchor. * * * Consequently, we can only determine that summary judgment was improper." Id. at ¶ 15.

{¶ 35} Admittedly, *Coney* does not involve a medical malpractice claim, which may or may not require an expert to testify regarding certain matters. However, our prior rationale is helpful in dispelling Trinity's claim that at the summary judgment level, the responsible tortfeasor must be identified with a great degree of certainty. Instead, this court has concluded that such a decision must be taken to a jury so long as sufficient evidence exists to support the plaintiff's claim.

{¶ 36} In the present case, this court is faced with much the same situation in *Coney,* as there are several actors that all deny leaving the sponge in Eannottie's wound. Like the plaintiff in *Coney,* Eannottie has singled out one defendant that she believes most likely caused her injuries based upon the testimony adduced during discovery.

{¶ 37} More specifically, Eannottie presented the trial court with evidence that her wound was not "packed" or filled with dressings until she was discharged from the Carriage Inn. Until that time, the wound had been closed. During the time period her wound was being "packed," Eannottie was being primarily treated by the Trinity nurses. The nurses had access to the wound one to two times a day for up to six months. Notably, certain home health nurses from Trinity utilized the 4″ × 4″ material, such as the type found in Eannottie's wound.

{¶ 38} Additionally, Eannottie presented evidence that it was unlikely that the sponge entered her wound during any of the procedures performed by Dr. Goodman. The types of sponges utilized by Goodman were specially marked, or radiopaque, so that if one was left within a patient's body it could be detected with an x-ray. The sponge found inside Eannottie was not radiopaque. Finally evidence was presented by expert Priebe that the sponge was most likely placed inside Eannottie during the time period that she was being treated by the Trinity nurses. More specifically Priebe stated in his deposition:

{¶ 39} "I think all I can say is that it got into the wound sometime, and I think you've helped me narrow this down, from the 15th of October, when the wound opened up and the cavity was exposed, until I would say a period of time three to four weeks before Dr. Eddington operated on her."

{¶ 40} In light of the deposition testimony presented by Eannottie, we find that sufficient evidence exists so that reasonable minds could find that the Trinity nurses were responsible for placing and leaving the sponge inside Eannottie. Applying our rationale from *Coney* to these facts, there remains a genuine issue of fact precluding summary judgment.

### Res Ipsa Loquitur

{¶ 41} We note that at both oral argument and in its brief, Trinity argues that the decision of the trial court should still be affirmed because the doctrine of res ipsa loquitur does not apply in this case. Trinity is correct in its assertion that res ipsa loquitur does not apply here. But this does not affect our analysis. Eannottie does not rely upon the doctrine nor does she need to in order to survive summary judgment.

{¶ 42} For the application of the doctrine of res ipsa loquitur to apply, "a plaintiff must adduce evidence in support of two conclusions: (1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 187–188, 18 OBR 253, 480 N.E.2d 464, quoting *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66–67, 52 O.O.2d 366, 262 N.E.2d 703. See, also, *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 203, 560 N.E.2d 165.

{¶ 43} Although the doctrine of res ipsa loquitur can be applied to multiple defendants, all defendants collectively must have exclusive control of the instrumentality that caused the injury for res ipsa loquitur to apply. *Getch v.*

*Bel–Park Anesthesia Assn.* (Apr. 15, 1998), 7th Dist. No. 96 C.A. 84, 1998 WL 201452. This court explained in *Getch* that "[t]he exclusive management of the occurrence must be in the control of the defendants and not in the control even partially of any other person or persons." Id. at 3. For if some other person or persons, other than the named defendants, had even partial control of the occurrence, the inference permitted by res ipsa loquitur would be improper. Id.

{¶ 44} Because not all of the people who had control over Eannottie's wound are named defendants in this lawsuit, Eannottie cannot take advantage of the doctrine of res ipsa loquitur. However, Eannottie does not need it to survive summary judgment. More specifically, the doctrine of res ipsa loquitur permits a plaintiff in a negligence action to prove, through the use of circumstantial evidence, that a defendant was negligent. *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 170, 17 O.O.3d 102, 406 N.E.2d 1385. However, as the Supreme Court explained in *Jennings,*

{¶ 45} "The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery; rather, it is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." Id. at 169, 17 O.O.3d 102, 406 N.E.2d 1385.

{¶ 46} In the present case, it is undisputed that it was negligent to leave a sponge inside Eannottie's wound. Eannottie would not benefit from the application of the doctrine of res ipsa loquitur because this is not a case where the fact-finder must infer from the circumstances that some negligent act took place. Instead, this case comes down to who the fact-finder believes left the sponge inside Eannottie's wound. That is precisely why summary judgment should have not been granted in this case. There remains a genuine issue of material fact to be resolved by the fact-finder. Eannottie's first assignment of error is meritorious.

{¶ 47} According, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

WAITE, P.J., and VUKOVICH, J., concur.