HICKORY GROVE INVESTORS, LTD., Appellee,

v.

JACKSON et al., Appellants.

[Cite as *Hickory Grove Investors, Ltd. v. Jackson*, 180 Ohio App.3d 60, 2008-Ohio-6428.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–514.

Decided Dec. 9, 2008.

Caborn & Butauski Co., L.P.A., and Joseph A. Butauski, for appellee.

Eric E. Willison; and Benesch, Friedlander, Coplan & Aronoff, L.L.P., and James L. Ervin Jr., for appellants.

KLATT, Judge.

{¶ 1} Defendants-appellants, Michael Jackson and Christina Deal, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, Hickory Grove Investors Limited. For the following reasons, we reverse and remand.

{¶ 2} In mid-December 2002, Jackson, Deal, and their family moved into an apartment owned by Hickory Grove. At that time, the Jackson–Deal family included the couple's two children and Deal's son, Daiqwon Deal.

{¶ 3} Sometime in July or August 2004, Hickory Grove constructed a six-foot-high steel fence along a portion of the apartment complex's perimeter. The fence created a barrier between the apartment complex and the back of the neighboring shopping center. Intent upon preserving its tenants' safety, Hickory Grove installed the fence to prevent people from passing through its property to go to and from the shopping center. The fence consisted of approximately 20 vertical pickets between each post, with one horizontal railing banding the bottom of the pickets and two horizontal railings banding the top of the pickets. Each picket rose above the top horizontal railing.

{¶ 4} On September 2, 2004, ten-year-old Daiqwon decided to climb the fence to reach the shopping center on the other side. Daiqwon ran to the fence, jumped up and grabbed the top of the fence, and then shimmied up the pickets. He pushed himself up and over the top railing, and put his right foot on a four-foot chain-link fence located on the shopping center side of the fence. While moving his left foot to the chain-link fence, Daiqwon slipped and impaled himself on Hickory Grove's fence. One of the pickets pierced the underside of Daiqwon's jaw and tongue before exiting through his mouth. Fortunately, a neighbor heard Daiqwon's calls for help and summoned his parents. Jackson held Daiqwon up while Deal called 911. Emergency responders cut the fence railings on either side of Daiqwon to remove him from the fence, and then they airlifted him to Children's Hospital. Doctors removed the picket from Daiqwon's jaw and tongue and successfully treated his injuries.

{¶ 5} On October 8, 2004, Hickory Grove commenced a forcible-entry-and-detainer action against Jackson in the Franklin County Municipal Court. The complaint alleged that Jackson had not paid his rent for October 2004, and it sought to recover the rental amount and other unpaid charges via a claim for breach of contract. On October 18, 2004, Hickory Grove voluntarily dismissed the forcible-entry-and-detainer action. After the dismissal, only the breach-of-contract claim remained pending against Jackson.

{¶ 6} For over a year, neither party took any action with regard to Hickory Grove's breach-of-contract claim. Then, on October 19, 2005, Jackson sought leave to file an answer and counterclaim. In the counterclaim, Jackson and Deal, on their own behalf and on behalf of Daiqwon, asserted claims for (1) retaliatory eviction in violation of R.C. 5321.02, (2) common-law negligence, (3) negligence per se based upon a violation of R.C. 5321.04, (4) violation of R.C. 5321.06 and failure to return Jackson's security deposit, (5) loss of consortium, (6) intentional infliction of emotional distress, and (7) negligent infliction of emotional distress.

Defendants' second, third, fifth, sixth, and seventh claims all arose from Daiqwon's accident.

{¶ 7} The municipal court granted defendants leave to file the answer and counterclaim. Because defendants sought more than $15,000 in damages, the municipal court transferred the case to the Franklin County Court of Common Pleas. Defendants then filed an amended answer and counterclaim. Importantly, this pleading added an eighth claim for negligence per se based upon a violation of Columbus City Code ("C.C.C.") 4525.13.

{¶ 8} After conducting discovery, Hickory Grove filed a motion seeking summary judgment on defendants' claims for common-law negligence, negligence per se based upon a violation of R.C. 5321.04, loss of consortium, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence per se based upon a violation of C.C.C. 4525.13. On the same day, defendants filed a motion seeking summary judgment in their favor on three claims—the two claims for negligence per se and the claim that Hickory Grove evicted the Jackson–Deal family in violation of R.C. 5321.02.

{¶ 9} In relevant part, Hickory Grove argued that defendants could not present any evidence to prove that it violated C.C.C. 4525.13, and thus it contended that the trial court should grant summary judgment in its favor on defendants' negligence per-se-claim. C.C.C. 4525.13(b) states:

> No person shall erect, construct or maintain any electric fence, barbed wire fence or a fence having wire or metal prongs or spikes within a residential district or on property which abuts residential property unless such fence is required to protect the public from hazardous equipment or from a club or commercial swimming pool.

Defendants asserted in their complaint that the fence had metal spikes, which meant that Hickory Grove's construction and maintenance of the fence violated C.C.C. 4525.13. Hickory Grove, however, presented affidavit testimony from Robert J. Beggs, the managing member of Hickory Grove, in which he stated that a Columbus code enforcement officer had inspected the fence and Hickory Grove did not receive any citation. Additionally, Beggs directed the trial court to the fence manufacturer's brochure, which stated that each picket top was "formed with a 3/8 [inch] diameter rounded tip rather than a sharp point."

{¶ 10} In their motion for summary judgment, defendants set forth evidence that they argued established Hickory Grove's liability for negligence per se based upon a violation of C.C.C. 4525.13. In their depositions, Deal and Daiqwon testified that the fence top consisted of spikes and that each picket came to a sharp point. Additionally, defendants asserted that the nature of Daiqwon's injury belied Hickory Grove's contention that the pickets were so rounded that they could not be spikes or prongs. Defendants also pointed out that the fence

manufacturer's brochure described the fence as being topped by "picket spear[s]."

{¶ 11} After the parties completed the summary-judgment briefing, they attended a pretrial conference during which the trial court allegedly questioned why neither party had introduced evidence explaining the city of Columbus's position on whether the fence violated C.C.C. 4525.13. In response, Hickory Grove filed a "supplemental memorandum" to its motion for summary judgment and memorandum contra to defendants' motion for summary judgment. Hickory Grove attached to its supplemental memorandum the affidavit of Michael Farrenkopf, Code Enforcement Development Program Coordinator for the City of Columbus Department of Development. Farrenkopf inspected Hickory Grove's fence and testified as follows:

5) * * * I noted that the fence-top had metal attachments that upon first glance could appear to be spikes or prongs. I observed the fence tops, and also ran my hands along them, and quickly concluded they were in fact NOT spikes or prongs, but ornamental tops constructed of the same light-weight metal as the fence. In fact, the portion of the tops that may have appeared to be "pointed," were rounded so as not to be sharp.

6) I determined the fence was NOT in violation of CCC section 4525.13, and so advised the Code Enforcement Officer assigned the issue. Further I recommended the Code Enforcement Officer not issue a notice of violation to the responsible parties for anything related to this fence.

{¶ 12} Defendants responded to this additional evidence with a motion to strike. The trial court denied defendants' motion to strike and went on to grant summary judgment in Hickory Grove's favor based, in part, upon Farrenkopf's testimony.[1] The trial court found that defendants' "lay opinions" could not counter the weight of the evidence presented by Hickory Grove. On March 6, 2008, the trial court reduced its rulings on the summary-judgment motions to judgment and included in that judgment Civ.R. 54(B) language.

{¶ 13} Defendants now appeal from the March 6, 2008 judgment and assign the following errors:

[1] The Trial Court erred when it found no genuine issue of material fact on this issue of whether the fence upon which Defendant–Appellant Daiqwon Deal was injured had spikes or metal prongs.

[2] The Trial Court erred when it found that expert testimony was required to establish whether or not the fence upon which Defendant–Appellant Daiqwon Deal was injured had sharp tops or rounded tops.

---

1. The trial court also denied defendants' motion for summary judgment.

■ The Trial Court erred when it found when it denied [sic] Defendants–Appellants' Motion to Strike Affidavit of Farrenkopf and instead relied upon it when granting Plaintiff–Appellee Hickory Grove Investor Ltd.'s Motion for Summary Judgment.

{¶ 14} We will address defendants' third assignment of error first. By that assignment of error, defendants argue that the trial court erred in refusing to strike and in considering Farrenkopf's affidavit testimony. Although we do not believe that the trial court so erred, we conclude that even if the trial court's treatment of Farrenkopf's testimony constituted error, that error was harmless.

■ {¶ 15} Pursuant to Civ.R. 56(E), an affidavit must "set forth such facts as would be admissible in evidence" or it is subject to a motion to strike. An appellate court will not overturn a trial court's ruling on a motion to strike absent an abuse of discretion. *Samadder v. DMF of Ohio, Inc.,* 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶ 17.

{¶ 16} In the case at bar, defendants primarily rely upon *Wolfe v. Baskin* (1940), 137 Ohio St. 284, 18 O.O. 45, 28 N.E.2d 629, and its progeny to argue that the trial court erred in admitting Farrenkopf's affidavit testimony. In *Wolfe,* the Supreme Court of Ohio held:

> It is a general rule that in a civil action the question of arrest is immaterial. * * * The same rule has been applied to non-arrest.

Id. at 289, 18 O.O. 45, 28 N.E.2d 629. Subsequent Ohio cases have expanded the rule articulated in *Wolfe* to preclude evidence of the issuance or nonissuance of a traffic citation. See, e.g., *O'Toole v. Lemmerman,* Cuyahoga App. No. 80730, 2002-Ohio-5469, 2002 WL 31261005, ¶ 32; *Waller v. Phipps* (Sept. 14, 2001), Hamilton App. No. C–000758, 2001 WL 1077942; *Bishop v. Munson Transp., Inc.* (Mar. 27, 2000), Belmont App. No. 97 BA 62, 2000 WL 309398.

{¶ 17} When a Columbus code enforcement officer determines that a violation of the Columbus housing code has occurred, he or she must give a notice of the violation to the person or persons responsible for the violation. C.C.C. 4509.02. Like an arrest or the issuance of a citation, the issuance of a notice of violation indicates that a law-enforcement officer has determined that the recipient disobeyed the law. Furthermore, arrest, citation, and a notice of violation all constitute the initial step in criminal prosecution. See C.C.C. 4509.99(A) (requiring Columbus code enforcement officers to make a "diligent effort" to serve a notice of violation before pursuing criminal prosecution for a violation of a Columbus housing code provision). Therefore, defendants have made a powerful argument for the expansion of the rule articulated in *Wolfe* to preclude evidence that a Columbus code enforcement officer did not issue Hickory Grove a notice of violation.

{¶ 18} However, even if this court were to apply *Wolfe* here, it would not necessarily render any of Farrenkopf's affidavit testimony inadmissible. First, in the majority of his affidavit, Farrenkopf offers his firsthand impressions of the fence and his opinion as to whether the fence had spikes or prongs. *Wolfe* would not bar any of this testimony. Second, Farrenkopf merely testified that he *recommended* that the Columbus code enforcement officer not issue a notice of violation to Hickory Grove. Applied strictly, *Wolfe* would only preclude testimony as to the issuance or nonissuance of a notice of violation, not Farrenkopf's recommendation.

{¶ 19} Moreover, at worst, admission of Farrenkopf's recommendation amounted to harmless error. Hickory Grove had already introduced affidavit testimony from Beggs that a Columbus code enforcement officer had examined the fence and not issued a "citation." As defendants did not object to Beggs's affidavit, the trial court could consider it. *Otto v. Country Mut. Ins. Co.*, Franklin App. No. 07AP–227, 2008-Ohio-1514, 2008 WL 852613, ¶ 12 (holding that without an objection to the admissibility of improper evidence offered in support of or in opposition to a motion for summary judgment, the trial court may consider the evidence). Consequently, even in the absence of Farrenkopf's testimony, the evidence before the trial court would have included the fact that a Columbus code enforcement officer had not issued a notice of violation to Hickory Grove.

{¶ 20} In sum, we conclude that the trial court did not abuse its discretion in denying defendants' motion to strike Farrenkopf's affidavit testimony. Even if the trial court had committed error in admitting and considering the testimony, that error was harmless. Accordingly, we overrule defendants' third assignment of error.

{¶ 21} We will address defendants' first and second assignments of error together. By those assignments of error, defendants argue that the trial court erred in concluding that they did not offer sufficient evidence to establish a genuine issue of material fact as to whether Hickory Grove violated C.C.C. 4525.13. We agree.

{¶ 22} Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 757 N.E.2d 329. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that

conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶ 23} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. Id. If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Id.

{¶ 24} Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198, citing *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph two of the syllabus. Proving a violation of a legislative enactment establishes that the alleged tortfeasor has breached its duty to the injured party. *Chambers* at 565, 697 N.E.2d 198. However, the injured party must also prove proximate cause and damages in order to prevail on a negligence-per-se claim. Id.

{¶ 25} In the case at bar, defendants assert that Hickory Grove is negligent per se because it violated C.C.C. 4525.13(b). Whether or not Hickory Grove complied with its duty under C.C.C. 4525.13(b) depends upon whether it constructed and maintained a fence with spikes or prongs. Hickory Grove relies upon Farrenkopf's testimony to establish that neither spikes nor prongs topped its fence. Additionally, Hickory Grove points to the fence manufacturer's characterization of the picket tops as "rounded." In response, defendants direct this court to Deal's and Daiqwon's testimony that the pickets ended in sharp spikes. Also, defendants note that the fence manufacturer referred to the end of each picket as a "spear."

{¶ 26} We conclude that defendants' evidence contravenes the evidence Hickory Grove submitted. By setting forth evidence tending to show that the fence

had spikes or prongs, defendants created a genuine issue of material fact that prohibits an award of summary judgment to Hickory Grove.

{¶ 27} Hickory Grove, however, dismisses Deal's and Daiqwon's testimony as unworthy of consideration. While Deal and Daiqwon merely opine that the pickets ended in sharp spikes, a lay witness may offer his or her opinions into evidence, as long as those opinions are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. Here, both Deal and Daiqwon have firsthand knowledge of the fence: both lived in close proximity to it, and Daiqwon impaled himself on it. Additionally, Deal's and Daiqwon's testimony is helpful to the determination of a fact in issue because it directly answers whether the fence had spikes or prongs—the operative issue in determining whether Hickory Grove is negligent per se. Having met both Evid.R. 701 requirements, Deal's and Daiqwon's lay opinion testimony is admissible evidence.

{¶ 28} Because Deal's and Daiqwon's testimony is admissible, both Hickory Grove and the trial court erred in discounting it. Courts may not weigh the evidence or consider the credibility of witnesses in ruling upon a motion for summary judgment. *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, 857 N.E.2d 1255, ¶ 16. See also *Gessner v. Schroeder*, Montgomery App. No. 21498, 2007-Ohio-570, 2007 WL 431421, ¶ 43 ("When material facts are controverted, courts may not weigh the credibility of witnesses or assess the relative value of their testimony when deciding motions for summary judgment"). Here, the trial court impermissibly weighed the evidence when it balanced Farrenkopf's testimony against Deal's and Daiqwon's testimony and found Farrenkopf's testimony more persuasive.

{¶ 29} Moreover, the fact that Farrenkopf testified as an "expert," while Deal and Daiqwon only offered lay opinion, does not ameliorate the trial court's error. Pursuant to Evid.R. 702(A), a witness may only testify as an expert if his or her testimony "relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." See also *Eannottie v. Carriage Inn*, 155 Ohio App.3d 57, 2003-Ohio-5310, 799 N.E.2d 189, ¶ 15 ("[E]xpert testimony is not admissible if the opinion expressed is within 'the ken' or range of knowledge of the jury"); *Campagna v. Clark Grave Vault Co.* (June 28, 2001), Franklin App. No. 00AP–605, 2001 WL 721808 ("When an issue is within the experience, knowledge and comprehension of the jury, the expert testimony on that issue is unnecessary and inadmissible because it is of no assistance to the jury").

{¶ 30} Whether or not a fence picket ends in a spike or prong is a matter within the range of common knowledge and experience. Therefore, Farrenkopf

cannot offer an expert opinion on that matter. His testimony is, nevertheless, admissible because he (like Deal and Daiqwon) has personally observed the fence and thus may offer a lay opinion of its physical characteristics.

{¶ 31} As defendants presented admissible evidence showing a genuine issue of material fact, the trial court erred in granting Hickory Grove summary judgment. Accordingly, we sustain defendants' first and second assignments of error.

{¶ 32} For the foregoing reasons, we sustain defendants' first and second assignments of error, and we overrule defendants' third assignment of error. We reverse the judgment of the Franklin County Court of Common Pleas as it relates to defendants' claim for negligence per se based upon a violation of C.C.C. 4525.13. Furthermore, we remand this matter to that court for further proceedings consist with law and this opinion.

Judgment reversed<br>and cause remanded.

BRYANT and TYACK, JJ., concur.