SAMADDER, Appellant,

v.

DMF OF OHIO, INC. et al., Appellees.

[Cite as *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1116.

Decided Oct. 7, 2003.

772

James H. Banks, for appellant.

McFadden, Winner & Savage and Mary Jane McFadden, for appellees.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Anjana Samadder, M.D., appeals from the Franklin County Court of Common Pleas' grant of summary judgment to defendants-appellees, DMF of Ohio, Inc. ("DMF"), Tasos Manokas, D.O., David S. Lever, M.D., Adam Tzagournis, M.D., Robert LaFollette, John J. Razem, and Kathy Stemen. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Appellant is a physician, specializing in gastroenterology. In June 2000, appellant completed her three-year fellowship in gastroenterology at the Ohio State University College of Medicine ("Ohio State"). Upon the completion of her fellowship, appellant accepted an offer of employment as a Clinical Assistant Professor of Medicine in the Department of Internal Medicine at Ohio State. Simultaneously with her acceptance of employment with Ohio State, appellant accepted employment with DMF, a practice plan under which physicians employed with Ohio State's Department of Internal Medicine engage in the private practice of medicine. Any revenue resulting from the treatment of private patients by physicians associated with Ohio State reverts to DMF. With this revenue, DMF compensates the physicians for providing private medical services and pays for the support services necessary for the physicians to treat their patients. DMF is not a subsidiary or division of Ohio State.

{¶ 3} On July 28, 2000, appellant entered into two separate employment contracts—one with Ohio State and one with DMF. Both employment contracts specified that appellant's term of employment would last ten months, beginning on September 1, 2000, and ending on June 30, 2001. Pursuant to the employment contracts, both Ohio State and DMF paid a portion of appellant's total salary.

{¶ 4} Appellant's employment contract with Ohio State mandated that appellant's clinical activity would include "outpatient clinics and/or inpatient service at St. Ann's Hospital, OSU–East Hospital, Columbus Community Hospital and Mt. Carmel Medical Center, on-call time, and responding to group patients in facilities as needed." The Ohio State employment contract also specified that appellant's "primary practice location will be in Lancaster, Ohio with Drs. Lever, Manokas and Tzagournis" and included a tentative clinical schedule of ten half-day clinics at designated locations.

{¶ 5} When appellant joined DMF, Dr. John Fromkes, Director of the Division of Digestive Diseases at Ohio State, assigned her to the DMF practice group doing business as "Digestive Associates of Ohio" ("Digestive Associates") in Lancaster, Ohio. Dr. Fromkes informed appellant that the business plan for Digestive Associates included expansion of the Lancaster-based practice into areas of Columbus not already being served by Ohio State physicians, and that he expected appellant to work with the other physicians in the group to reach this goal.

{¶ 6} Appellant joined three other physicians—Drs. Lever, Manokas, and Tzagournis—already practicing with the Digestive Associates group. Dr. Lever, an experienced gastroenterologist, founded Digestive Associates. Drs. Manokas and Tzagournis joined Digestive Associates only a year before appellant joined the group.

{¶ 7} Unlike the other three physicians in appellant's group, appellant did not see any patients in the Lancaster office; rather, appellant saw patients only at various locations in Columbus. However, the staff at the Lancaster office was responsible for scheduling appellant's patients' appointments and procedures, and maintaining appellant's patients' charts.

{¶ 8} Appellant rarely visited the Lancaster office during her ten-month employment term, and her absence from the office where her group was based caused friction between appellant, on one hand, and Drs. Lever, Manokas, and Tzagournis, and the staff, on the other. Problems arose relatively quickly, with appellant asserting that she was getting insufficient support from the staff. Among other complaints, appellant alleged that the staff was putting her work on the "bottom of the barrel," the staff was rude to her, and the staff was scheduling patients referred to her to other group physicians. In return, staff members, including Kathy Stemen, the Lancaster office manager, asserted that appellant was difficult to work for, in part, because she refused to visit regularly the Lancaster office.

{¶ 9} When appellant asked Stemen whether appellant's difficulties with the staff were due to appellant's nationality or sex, Stemen contacted Robert LaFollette, Administrator of Clinical Operations and Managed Care Contracting for DMF. LaFollette and John Razem, the then Chief Operating Officer of DMF, met with appellant to discuss her difficulties. Both concluded that appellant's complaints were not attributable to any kind of discrimination.

{¶ 10} In April 2001, Dr. Fromkes held a meeting with all four Digestive Associates physicians to address the problems the group was experiencing. During this meeting, appellant agreed to begin seeing patients at the Lancaster office.

{¶ 11} In the beginning of May 2001, appellant gave birth to a son. Appellant contends that she had to return to work by the end of May because the other Digestive Associates physicians would not cover her patients.

{¶ 12} On June 15, 2001, appellant received a letter from Razem, informing her that her employment contracts with DMF and Ohio State would not be renewed. In response, appellant filed a complaint against appellees on August 16, 2001, in which she alleged breach of contract, sex, race, and national origin discrimination in violation of R.C. 4112.02, race discrimination in violation of Section 1981, Title 42, U.S.Code ("Section 1981"), and violation of the Family Medical Leave Act ("FMLA"), Section 2601 et seq., Title 29, U.S.Code. DMF counterclaimed for breach of contract.

{¶ 13} Appellees filed a motion for summary judgment on all of appellant's claims on June 6, 2002. Appellant responded with a memorandum contra, as well as a motion to strike each affidavit supporting appellees' motion for summary judgment. The trial court denied appellant's motion to strike and granted appellees' motion for summary judgment. Thereafter, the trial court issued a "Supplemental Decision" in which it concluded that appellant's affidavit included a number of inconsistencies. The trial court determined that appellant could not use these inconsistencies to create an issue of fact to defeat appellees' motion for summary judgment.

{¶ 14} After DMF dismissed its counterclaim, the trial court issued final judgment in favor of appellees on September 20, 2002. Appellant then filed this appeal.

{¶ 15} On appeal, appellant assigns the following assignments of error:

"[1.] The trial court erred in finding that there was no breach of contract.

"[2.] The trial court erred in granting summary judgment on plaintiff-appellant's discrimination claims.

"[3.] The trial court erred in making determinations of issues of fact in ruling on summary judgment.

"[4.] The trial court erred in concluding that plaintiff-appellant is not entitled to benefits under the Family Medical Leave Act.

"[5.] The trial court erred in dismissing the individual defendants.

"[6.] The trial court erred in denying plaintiff's motion to strike affidavits and in issuing its supplemental decision to defendants' motion for summary judgment."

{¶ 16} We will first address appellant's sixth assignment of error. By her sixth assignment of error, appellant argues, in part, that the trial court erred in not striking the affidavits of Drs. Fromkes, Manokas, Tzagournis, and Lever, Mr.

LaFollette, Mr. Razem, and Ms. Stemen, all of which supported appellees' motion for summary judgment.

{¶ 17} "Affidavits that are inconsistent with earlier deposition testimony are subject to be stricken." *Sharma v. Hummer* (Apr. 27, 2001), Wood App. No. WD–00–047, 2001 WL 460281. Likewise, affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence, or they are subject to a motion to strike. Civ.R. 56(E). A trial court's decision to grant or deny a motion to strike will not be overturned on appeal absent a showing of abuse of discretion. *Kennedy v. Merck & Co., Inc.*, Montgomery App. No. 19591, 2003-Ohio-3774, 2003 WL 21658613, ¶ 42.

{¶ 18} Appellant first argues that the trial court should have struck Drs. Manokas's and Lever's affidavits because they allegedly contain averments contradicting the physicians' deposition testimony. We find appellant's argument unavailing. Contrary to appellant's assertions, our review of Drs. Manokas's and Lever's deposition testimony does not reveal any conflicts with the averments in their affidavits.

{¶ 19} Next, appellant attacks each affidavit submitted with appellees' motion for summary judgment as either contradicting DMF's answers to plaintiff's first set of interrogatories, or containing information not included in those answers. To the extent that the affidavits amplify information contained in DMF's answers, they are not subject to a motion to strike. See *Sharma,* supra (affidavit testimony "that supplements or clarifies an earlier testimony with more specific detail is not in conflict"). Although conflicting testimony must be stricken, our review of the affidavits does not reveal any testimony in conflict with DMF's answers to the first set of interrogatories.

{¶ 20} Appellant also argues that each affidavit submitted with appellees' motion for summary judgment contains hearsay and conclusory statements and is not based upon personal knowledge. After a close review of each affidavit, we conclude that the affidavits comply with Civ.R. 56(E). Consequently, the trial court did not abuse its discretion in denying appellant's motion to strike.

{¶ 21} By her sixth assignment of error, appellant also argues, in part, that the trial court acted unfairly by not finding any inconsistencies between Drs. Manokas's and Lever's affidavits and deposition testimony, but concluding that appellant's affidavit conflicted with her deposition testimony. We find this argument to be groundless. Our review of appellant's affidavit and deposition testimony reveals the same inconsistencies the trial court found. Further, as we concluded above, Drs. Manokas's and Lever's affidavits and depositions contain no such inconsistencies.

{¶ 22} Accordingly, we overrule appellant's sixth assignment of error.

{¶ 23} The remainder of appellant's assignments of error challenges the trial court's grant of summary judgment. Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 24} By appellant's first assignment of error, she argues that appellees breached her employment contracts by not properly assigning referrals, refusing to provide prescription pads, refusing to provide administrative support and office space, and not awarding her a bonus.

{¶ 25} Before we address the merits of appellant's breach-of-contract claim, we must first determine which of the appellees could be liable for breach of contract. In her amended complaint, appellant alleges that each appellee, including the individual appellees, is separately liable for the alleged breach of her employment contracts. However, a contract is binding only upon parties to a contract and those in privity with them. *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.* (1992), 80 Ohio App.3d 53, 58, 608 N.E.2d 830. The only parties to the employment contracts at issue are appellant and DMF, and appellant and Ohio State. Accordingly, to the extent appellant alleges a breach-of-contract claim against the individual appellees, who are not parties to the employment contracts, her claim was properly dismissed on summary judgment.

{¶ 26} Further, because Ohio State is not a defendant in this action, we will not address any potential breaches of appellant's employment contract with Ohio State. Thus, the sole issue presented by appellant's breach-of-contract claim is whether DMF breached its employment contract with appellant.

{¶ 27} In order to prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the plaintiff. *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874, at ¶ 27. Although appellant alleges that DMF committed a number of breaches of her employment contract, she does not specify what contractual terms were breached. Our review of appellant's employment contract with DMF reveals

nothing that addresses referrals, prescription pads, administrative support, office space, or bonuses.

{¶ 28} In her only attempt to point to a specific contract term DMF allegedly breached, appellant directs this court to a provision included within appellant's contract with Ohio State, which states, "You will be provided with appropriate secretarial support and office space." However, as this term was not part of *DMF's* contract with appellant, DMF cannot be liable for its alleged breach. Therefore, none of appellant's allegations constitutes a breach of her contract with DMF.

{¶ 29} Accordingly, we overrule appellant's first assignment of error.

{¶ 30} By appellant's second assignment of error, she argues that appellees are liable under R.C. 4112.02 for discriminating against appellant because of her sex, race, and national origin, and Section 1981 for discriminating against appellant because of her race.

{¶ 31} Again, we must first address whether the individual appellees could be liable for appellant's employment-discrimination claims prior to examining the merits of these claims. For the purposes of R.C. Chapter 4112, supervisors and managers may be held jointly and/or severally liable with their employer for their discriminatory conduct. *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, syllabus. However, none of the individual appellees acted as appellant's supervisor or manager. Therefore, the trial court correctly dismissed appellant's R.C. 4112.02 claim as to each of the individual appellees. See *Hoon v. Superior Tool Co.* (Jan. 24, 2002), Cuyahoga App. No. 79821, 2002 WL 93422 (holding that "non-supervisory employees should be precluded from liability under R.C. Chapter 4112," and concluding that summary judgment on a plaintiff's discrimination claim against a nonsupervisory coemployee was proper).

{¶ 32} Unlike claims for violation of R.C. 4112.02, claims pursuant to Section 1981 may be asserted against individuals " 'when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.' " *Dalton v. Jefferson Smurfit Corp.* (S.D.Ohio 1997), 979 F.Supp. 1187, 1203, quoting *Al–Khazraji v. St. Francis College* (C.A.3, 1986), 784 F.2d 505, 518. See, also, *Williams v. United Dairy Farmers* (S.D.Ohio 1998), 20 F.Supp.2d 1193, 1202 ("Defendants can be held individually liable for discrimination under § 1981, which prohibits interference with contractual rights on the basis of race."). Therefore, the trial court erred in dismissing appellant's Section 1981 claim as to the individual appellees. However, for the following reasons, the individual appellees are entitled to summary judgment on appellant's Section 1981 claim.

{¶ 33} The same evidentiary framework is applicable to claims brought for violation of R.C. 4112.02 and Section 1981. *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582. Thus, we will address appellant's discrimination claims against DMF and the individual appellees together.

{¶ 34} Ohio courts examine both federal and state employment discrimination claims under federal case law. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128. According to both Ohio and federal law, a plaintiff may establish her employer's discriminatory intent by direct evidence, or by the evidentiary framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 584, 664 N.E.2d 1272.

{¶ 35} Under the *McDonnell Douglas* evidentiary framework, a plaintiff bears the initial burden of establishing a prima facie case. In order to do so, the plaintiff must present evidence that (1) she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position she lost; and (4) either that she was replaced by someone outside the protected class or that a nonprotected similarly situated person was treated better. *McDonnell Douglas,* supra, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Mitchell,* supra, at 582–583 (discussing the fourth element). Once a plaintiff has established a prima facie case, the employer assumes the burden of production to articulate some legitimate, nondiscriminatory reason for its action. *McDonnell Douglas,* supra, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the employer carries this burden, then the plaintiff must establish that the reasons the employer offered were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 36} The issue before this court is whether appellant's evidence establishes appellees' discriminatory intent via the *McDonnell Douglas* framework. With regard to the first and third elements of appellant's prima facie case, the parties do not dispute that appellant is a member of three protected classes based upon her sex, race, and national origin, and that appellant was qualified for her former position. However, appellees argue that appellant neither suffered an adverse employment action when her employment contracts were not renewed, nor was she treated worse than any nonprotected similarly situated coemployee. Further, appellees contend that, if appellant has established a prima facie case, DMF had a legitimate nondiscriminatory reason for not renewing appellant's employment contracts.

{¶ 37} Appellant first argues that the trial court erred when it concluded that the failure to renew appellant's contract was not an adverse employment action. We agree.

{¶ 38} Courts determine whether an employer's actions are adverse to an employee on a case-by-case basis. *Tessmer v. Nationwide Life Ins. Co.* (Sept. 30, 1999), Franklin App. No. 98AP–1278, 1999 WL 771013. Generally, adverse employment actions must materially affect the plaintiff's term and conditions of employment resulting in a job-related detriment. *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 727, 729 N.E.2d 813. See, also, *Traylor v. Brown* (C.A.7, 2002), 295 F.3d 783, 788 ("an employee must show that 'material harm has resulted from * * * the challenged actions' "), quoting *Haugerud v. Amery School. Dist.* (C.A.7, 2001), 259 F.3d 678, 692. Examples of such actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities[.]" *Peterson,* supra, 133 Ohio App.3d at 727, 729 N.E.2d 813, citing *Crady v. Liberty Natl. Bank & Trust Co.* (C.A.7, 1993), 993 F.2d 132, 136. Although adverse employment actions are not limited to economic losses, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.* (C.A.7, 1996), 89 F.3d 437, 441. Employment actions that result only in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action. *Peterson,* supra, 133 Ohio App.3d at 727, 729 N.E.2d 813.

{¶ 39} In the case at bar, the consequence of the decision not to renew appellant's employment contracts was the termination of her employment. Thus, the nonrenewal of appellant's contracts materially adversely affected the terms and conditions of appellant's employment and, thus, was an adverse employment action. Moreover, we note that R.C. 4112.02 does not limit claims of discrimination to wrongful discharge or refusal to hire, but, rather, allows claims for discrimination for a broad spectrum of employer actions, including those affecting "hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Consequently, failure to renew a contract is an actionable adverse employment action. *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 538, 672 N.E.2d 724 (nonrenewal of an employment contract qualifies as a civil rights violation as a matter of law). See, also, *Mateu–Anderegg v. School Dist. of Whitefish Bay* (C.A.7, 2002), 304 F.3d 618, 625 (decision not to renew a teacher's contract an adverse employment action).

{¶ 40} DMF argues that, even if the nonrenewal of appellant's employment contract is an adverse employment action, summary judgment in its favor on appellant's discrimination claims is still warranted because appellant was not

treated any worse than a nonprotected similarly situated person. A similarly situated person must be similar, but not identical, in all relevant respects to the plaintiff. *Bucher v. Sibcy Cline, Inc.* (2000), 137 Ohio App.3d 230, 241, 738 N.E.2d 435. Depending on the circumstances of the case, courts have previously required that a plaintiff and a similarly situated coemployee deal with the same supervisor, be subject to the same standards, and be equally qualified. Id. See, also, *Starner v. Guardian Industries* (2001), 143 Ohio App.3d 461, 473, 758 N.E.2d 270 (this court has previously examined salary grade, actual salary, experience, educational background, benefits, job title, and other privileges in determining whether coemployees are similarly situated).

{¶ 41} In the case at bar, appellant is similarly situated to Drs. Manokas and Tzagournis. Although Drs. Manokas and Tzagournis joined Digestive Associates one year before appellant, all three physicians completed the same fellowship program at Ohio State and all three joined Digestive Associates immediately after the fellowship program ended. All three physicians were employed with Ohio State and DMF via ten-month contracts. Additionally, the decision whether or not to renew each physician's contract was the responsibility of Dr. Fromkes, who recommended to the Chairman of the Department of Internal Medicine of Ohio State which physicians should receive contract offers. Drs. Manokas and Tzagournis were offered contract renewals. Appellant's contracts were not renewed.

{¶ 42} Because the evidence shows that appellant is a member of a protected class, she was subjected to an adverse employment action, she was qualified for her former position, and she was treated worse than nonprotected similarly situated co-employees, appellant has established a prima facie case of discrimination. Nevertheless, appellees may still be entitled to summary judgment if they can establish a legitimate nondiscriminatory reason for their actions, and appellant does not rebut the reason as pretext for discriminatory intent. *Burdine,* supra, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 43} DMF offered a legitimate nondiscriminatory reason for its decision not to renew appellant's employment contract. By affidavit, Dr. Fromkes testified that, in determining whether a physician should receive a contract offer, he evaluated the quality of the physician's patient care, the physician's patient care productivity, and the physician's contributions to the overall collegiality and smooth functioning of the faculty as a teaching and practicing group. In evaluating appellant, Dr. Fromkes concluded that appellant was not a mutually supportive member of her practicing group. Due to the level of frustration in the Digestive Associates group stemming from appellant's refusal to go to the Lancaster office, Dr. Fromkes foresaw the need for his regular intervention and worried that the other physicians in the group might leave. Based on these

reasons, Dr. Fromkes did not recommend that appellant receive employment contracts for the next academic year.

{¶ 44} In order to establish that an employer's stated reason for its adverse employment action is pretext for discrimination, an employee must "show that the employer's proffered reason is not worthy of credence or that discriminatory reasons 'more likely' motivated the employer's decision." *Bush v. Dictaphone Corp.*, Franklin App. No. 00AP–1117, 2003-Ohio-883, 2003 WL 549905, at ¶ 33. Appellant alleges that DMF's stated reason for not renewing her contract is pretext because (1) appellant's employment contract with Ohio State did not require her to see patients in Lancaster; and (2) Dr. Lever allegedly stated, "Why would anyone hire anyone like you?" and "[Appellant] [is] not board certified and this world [is] not ready for a female, this [is] a man's world, and especially in gastroenterology." (Posten Dep., at 94). We conclude that neither of these grounds is availing.

{¶ 45} First, appellant asserts that, because her contractual service requirements did not include seeing patients in Lancaster, Dr. Fromkes could not posit her failure to go to Lancaster as a legitimate nondiscriminatory reason for not renewing her contracts. Appellant's argument ignores the fact that Dr. Fromkes stated the reason for not renewing appellant's employment contracts was her inability to work cooperatively within the Digestive Associates group, and the foreseeable problems arising from that inability. Appellant's refusal to see patients in Lancaster was *illustrative* of her inability to work cooperatively but not the stated reason for the nonrenewal of her contracts.

{¶ 46} Nevertheless, assuming that appellant's employment contracts were not renewed because she refused to go to the Lancaster office, we still conclude that appellant did not establish pretext. As we stated above, appellant's employment contract with Ohio State required her to "respon[d] to group patients in facilities as needed." Accordingly, appellant was required to see patients, when she was needed, in the Lancaster office.

{¶ 47} Second, appellant alleges that Dr. Lever's two comments establish that discriminatory intent motivated Dr. Fromkes not to renew her employment contracts. However, " 'derogatory co-worker comments do not substantiate a finding of employment discrimination, when such comments cannot be linked to the decisionmaker bringing forth the adverse action.' " *Swiggum v. Ameritech Corp.* (Sept. 30, 1999), Franklin App. Nos. 98AP–1031 and 98AP–1040, 1999 WL 771022, quoting *Evans v. Jay Instrument & Specialty Co.* (S.D.Ohio 1995), 889 F.Supp. 302, 310. See, also, *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 384, 701 N.E.2d 1023 (" 'Stray remarks in the workplace when unrelated to the decision-making process, are insufficient to establish a

prima facie case of discrimination.' "). The parties do not dispute that Dr. Lever did not make the decision regarding appellant's employment contracts. Further, the parties do not dispute that Dr. Fromkes, the person who made the decision, was not present when Dr. Lever allegedly made the two comments. Therefore, Dr. Lever's alleged comments do not establish pretext.

{¶ 48} In addition to her claim stemming from Dr. Fromkes's decision not to renew her employment contracts, appellant also complains that appellees singled her out for unfavorable treatment because of her sex, race, and national origin. Appellant alleges that (1) appellees failed to order prescription pads and business cards bearing her name; (2) the staff put her work "on the bottom of the barrel"; (3) the staff was rude to her; (4) appellees did not give her keys to the Lancaster office; (5) appellees did not give her office space in the Lancaster office; (6) appellees did not provide her staff at the locations where she saw patients; and (7) the staff scheduled patients referred to appellant with other physicians in the group.

{¶ 49} As we stated above, in order to establish a prima facie case, a plaintiff must prove that she was subject to an adverse employment action. Here, the majority of actions about which appellant complains resulted only in annoyance or inconvenience for appellant, not material harm to the terms and conditions of appellant's employment. Furthermore, for those actions that do constitute adverse employment actions, appellees either demonstrate that the nonprotected similarly situated physicians were treated no better, or present an unrebutted legitimate nondiscriminatory reason for their actions.

{¶ 50} First, although appellant may not have received prescription pads bearing her name from Digestive Associates, she does not dispute that she did have access to prescription pads, including some that did bear her name, albeit printed by pharmaceutical companies. Consequently, the lack of Digestive Associates-printed prescription pads did not impair appellant's ability to do her job but merely presented an annoyance for appellant.

{¶ 51} Further, while appellant's name was removed from the business card bearing all of the Digestive Associates physicians' names, appellant acknowledges that she possessed Digestive Associates business cards bearing her name individually. Consequently, the evidence establishes that the lack of Digestive Associates business cards bearing all of the group physicians' names did not prevent appellant from distributing Digestive Associates business cards bearing her name. Moreover, Stemen explained that she ordered group business cards without appellant's name because she was under the impression that appellant was leaving Digestive Associates to begin another DMF practice in Columbus. Thus, even if appellant had established that the removal of her name from the group business card was an adverse employment action, appellees presented a

legitimate nondiscriminatory explanation for the removal of her name, which appellant did not assert was pretext.

{¶ 52} Second, appellant alleges that the staff delayed in scheduling medical services, calling in prescriptions for her patients, and in completing her work. Appellant also offers the affidavit of Lori Gordon, a former staff member, who testified that Stemen and other staff members would put appellant's charts on the bottom of the stack so that other physicians' charts would get priority in scheduling. Gordon also testified that sometimes appellant's patients would not be scheduled for months, while other group physicians' patients were scheduled within the week.

{¶ 53} Assuming that these alleged practices resulted in an adverse employment action, appellee offered a legitimate nondiscriminatory reason for these practices. Wanda Posten, a former staff member, testified that, pursuant to office procedure, patients with emergency conditions were given priority in scheduling, and other patients were scheduled in order of the date of the request for a procedure or appointment, no matter the location of their chart in the pile or who their physician was. Posten also testified that it took longer to schedule appellant's patients because the staff often did not have patient information needed for scheduling, and appellant was not in the Lancaster office to supply the necessary information. Appellant's absence forced Posten and other staff members to do time-consuming research in order to complete the scheduling.

{¶ 54} Similarly, work on appellant's patients' charts took longer because staff members had questions that appellant could not immediately or easily address because appellant was not present in the Lancaster office. Additionally, Stemen explained that, at times, there was a delay in calling in prescriptions for appellant's patients because appellant's requests had to be referred to the staff member trained to call in a prescription and patient information verified.

{¶ 55} To rebut the legitimate, nondiscriminatory explanations appellees offered for the alleged delays, appellant asserts that she cooperated with the staff in providing the necessary information promptly. Moreover, appellant alleges that patient information was available in the Lancaster office. Appellant's response does not address the underlying problem—her absence from the Lancaster office prevented easy resolution of questions and required the staff to do research in order to resolve these questions. Therefore, appellant's response does not establish that appellees' explanation for the delay in completing scheduling, work on patients' charts, and calling in prescriptions was pretext for discriminatory action.

{¶ 56} Third, appellant alleges that the staff was rude to her. While rudeness can be annoying and difficult to deal with, there is no evidence that the staff's alleged rudeness rose to the level of an adverse employment action.

{¶ 57} Fourth, appellant alleges that she did not have keys to the Lancaster office. However, appellant acknowledges that she visited the Lancaster office only eight to ten times during her ten-month term of employment, and that she went to the Lancaster office to deal with the staff. Therefore, appellant may have experienced aggravation because she could not enter the Lancaster office during non-office hours, but the terms and conditions of her employment were not adversely affected by her not having keys to the Lancaster office.

{¶ 58} Fifth, appellant alleges that she was not given office space in the Lancaster office. Again, appellant visited the Lancaster office only eight to ten times during her ten-month employment. When she did visit, she used the same office set aside for the other group physicians. Given that appellant spent little time at the Lancaster office, the lack of her own personal office space did not adversely affect the terms and conditions of her employment. Additionally, appellant does not dispute that office space in the Lancaster office was at a premium, and that Drs. Manokas and Tzagournis, who both saw patients in the Lancaster office, shared a desk.

{¶ 59} Sixth, appellant alleges that she was not provided with staff at the various locations where she saw patients, including Newark, St. Ann's, and the Outerbelt office. However, LaFollette explained that DMF provided support staff only at "new" locations, i.e., locations where DMF physicians had not previously seen patients, when it became cost-justified to do so. With regard to the Newark location, DMF had worked out an arrangement with a local physician whereby she allowed her staff to work for Digestive Associates physicians on Tuesdays. When appellant decided to see patients in Newark on Thursdays, the local physician's staff was not available. Appellant's volume of patients at the "new" locations, including St. Ann's and the Outerbelt office, never reached the level where hiring staff for those locations was cost-justified. Furthermore, appellant acknowledged that, when she saw patients at OSU East, an established DMF location, she was provided with a staff member to assist her, just as Drs. Manokas and Tzagournis each had one staff member to assist them at OSU East.

{¶ 60} Seventh, appellant alleges that patients referred to her were scheduled with other physicians in her group. Appellant names one specific patient who was allegedly referred specifically to her, but was scheduled with Dr. Manokas. Although appellant alleges that other patients referred to her were scheduled with other physicians in her group, she does not know the names of any of these patients.

{¶ 61} Even if we assume that the scheduling of patients referred to appellant with other group physicians constituted an adverse employment action, we conclude that DMF offered an unrebutted legitimate nondiscriminatory reason for the scheduling. During appellant's employment with Digestive Associates,

referrals were scheduled with consideration given to the medical condition of the patient, the preference of the referring physician or the patient, the insurance coverage of the patient, the availability of the requested physician, the geographic location of the patient in relation to service locations, and the insurance provider status of the treatment facility. Further, all hepatitis-C patients were referred to Dr. Manokas, because he had experience and interest in treating these patients.

{¶ 62} The record contains no evidence that the patients referred to appellant were scheduled in any way other than pursuant to the group's referral policy. The one identified patient appellant complains was wrongfully scheduled with Dr. Manokas had hepatitis-C. Consequently, when this patient was referred, she was scheduled to see Dr. Manokas pursuant to the referral policy. Appellant's allegation that Dr. Manokas was not an expert in hepatitis-C does not rebut the fact that the referral policy dictated that hepatitis-C patients were scheduled with Dr. Manokas.

{¶ 63} Because appellant cannot establish the actions of which she complains resulted from discriminatory intent, she cannot prevail upon her discrimination claims. We note, as the trial court did, that there are disputed issues of fact within the record regarding appellant's complaints. However, as none of these issues of fact is material, summary judgment was warranted. *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 22, 587 N.E.2d 391.

{¶ 64} Accordingly, we overrule appellant's second assignment of error.

{¶ 65} Because appellant's third and fourth assignments of error are related, we will address them together. First, by appellant's fourth assignment of error, she argues that appellees are liable for their failure to allow her to take a 12–week leave because of the birth of her son. In response, appellees assert that appellant was not an "eligible employee" of DMF entitled to FMLA leave and, thus, they cannot be liable under the FMLA.

{¶ 66} Pursuant to Section 2612, Title 29, U.S.Code:

"* * * [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

"(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter."

Pursuant to Section 2611, Title 29, U.S.Code, an "eligible employee" is defined as:

"* * * [A]n employee who has been employed—

"(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and

"(ii) for at least 1,250 hours of service with such employer during the previous 12–month period."

{¶ 67} Appellant does not dispute that she was employed by DMF for only ten months. Accordingly, appellant is not an "eligible employee" because she was not employed by DMF—the employer from whom she allegedly requested leave and now sues—for 12 months. Although appellant asserts that she was employed by Ohio State for over 12 months, she neither requested leave from, nor sued, Ohio State. Consequently, the term of appellant's employment with Ohio State has no bearing upon her status as an "eligible employee" for leave from DMF.

{¶ 68} By appellant's third assignment of error, she argues that the trial court improperly determined conflicting issues of fact related to appellant's FMLA claim in granting appellees' summary judgment. Specifically, appellant asserts that the trial court erroneously construed conflicting evidence to determine that appellant was not an employee of Ohio State, appellant did not give proper notice of her intent to take maternity leave, and DMF did not refuse to accommodate appellant while on maternity leave. Because none of these alleged factual determinations is relevant to our resolution of appellant's FMLA claim, appellant's argument is unavailing.

{¶ 69} Accordingly, we overrule appellant's third and fourth assignments of error.

{¶ 70} By appellant's fifth assignment of error, she argues that the trial court erred in dismissing the individual appellees. As we concluded above, the trial court correctly dismissed appellant's breach-of-contract and R.C. 4112.02 claims as to the individual appellees. Moreover, even if appellant's Section 1981 or FMLA claims could be asserted against the individual appellees, the trial court properly awarded appellees summary judgment on these claims. Therefore, whether or not the trial court erred in dismissing the individual appellees on these claims is a moot issue.

{¶ 71} Accordingly, we overrule appellant's fifth assignment of error.

{¶ 72} For the foregoing reasons, we overrule appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

PETREE, P.J., and WRIGHT, J., concur.

J. CRAIG WRIGHT, J., retired, of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.