DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Amy Yoho-Smith, appeals from the judgment of the Wayne County Court of Common Pleas granting summary judgment to Appellees, Santmyer Oil Company, Inc., SOCI Petroleum, Inc., and Terry Santmyer. We affirm.
 {¶ 2} Appellant filed a complaint on August 14, 2003, alleging gender discrimination. On June 14, 2004, Appellees filed a motion for summary judgment alleging that Appellant had failed to establish a prima facie case of gender discrimination. The trial court granted the motion for summary judgment on behalf of Santmyer Oil Company, Inc. on August 4, 2002, and amended that judgment entry, entering judgment for all named defendants, on September 21, 2004.
 {¶ 3} Appellant appeals the trial court's decision granting summary judgment to Appellees, raising two assignments of error for our review. For ease of discussion, we will consider both assignments of error together.
 ASSIGNMENT OF ERROR I
"The trial court erred in granting summary judgment as the analysis applicable to Appellant's claim is one based on direct evidence rather than the McDonnell Douglas/Burdine shifting analysis utilized in claims based on indirect evidence. Thus, the lower court's [sic] erred in determining that Appellant failed to establish a prima facie case of gender discrimination or failed to establish pretext. (42 U.S.C. § 2000e-2(m))[.]"
 ASSIGNMENT OF ERROR II
"Even if the McDonnell Douglas/Burdine shifting analysis applied to Appellant's claim of gender discrimination, there were triable issues of material fact that appellant's gender played a part in her inability to secure employment as a truck driver following the submission of her first application in August of 2001."
 {¶ 4} In both of her assignments of error, Appellant maintains that the trial court applied an improper analysis in determining whether she met her burden opposing summary judgment, and thus, the trial court erred in granting summary judgment in favor of Appellees. We disagree.
 {¶ 5} Summary judgment is proper under Civ.R. 56(C) if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
This court reviews the trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Any doubt must be resolved in the favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 6} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate absence of genuine issues of material fact as to an essential element of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden then shifts to the non-moving party to offer "specific facts showing that there is a genuine issue for trial." Id. See, also, Civ.R. 56(E). The non-moving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. Dresher, 75 Ohio St.3d at 293.
 {¶ 7} In this case, the trial court granted summary judgment in favor of Appellees, holding that Appellant had failed to establish a prima facie case of gender discrimination, which was the allegation of her complaint.
 {¶ 8} R.C. 4112.02(A) provides that it is an unlawful discriminatory practice for any employer to "discharge without just cause, to refuse to hire, or otherwise discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of gender.
 {¶ 9} A plaintiff alleging employment discrimination may establish a prima facie discrimination base by presenting direct evidence of discrimination, or with indirect evidence that raises a presumption of discrimination by following the standard set forth in McDonnell DouglasCorp. v. Green (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817;Williams v. Time Warner Cable (June 24, 1998), 9th Dist. No. 18663, at 7.
 {¶ 10} Under McDonnell Douglas, in order to establish a prima facie case of gender discrimination, the plaintiff must present evidence that: "(1) she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position she lost; and (4) either that she was replaced by someone outside the protected class," or that a comparable, non-protected person was treated more favorably. Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770,2003-Ohio-5340, at ¶ 35, citing McDonnell Douglas, 411 U.S. at 802.
 {¶ 11} Appellant maintains that the McDonnell Douglas standard does not apply in this case since she set forth direct evidence of discrimination. "To succeed utilizing direct evidence, a plaintiff `must prove a casual link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation.'" Stipkala v. Bank One N.A., 9th Dist. No. 21986,2005-Ohio-16, at ¶ 11, quoting Byrnes v. LCI Communications HoldingsCo. (1996), 77 Ohio St.3d 125, 130.
 {¶ 12} In the case at hand, we do not even get to an analysis of whether Appellant has proven a prima facie gender discrimination case. Before we can begin to analyze whether any sort of gender discrimination occurred, it must be proven that Appellant had an application pending with Appellee, and that her application was rejected. We find that Appellant effectively withdrew her first application to become a truck driver, and by the time she had communicated an interest in becoming a diver for Appellee again, she was not eligible to be hired due to multiple moving violations and a driver's license suspension.
 {¶ 13} Appellant was hired by Appellee, Santmyer Oil Company, on June 18, 2001, to work at the company's Marathon convenient store as a cashier. Appellant claims that she submitted an application to Appellee[1] to drive its tankers in August of 2001. Appellees dispute that Appellant submitted her application at that time and claim that there is no evidence to show that she ever applied for a driver position at that time.
 {¶ 14} On August 20, 2001, Appellant left her employment with Appellee's convenient store to go on maternity leave. Appellee, Santmyer Oil Company, held her position open, expecting her to return, as she had promised that she would. Several weeks after Appellant's son was born, in September or October of 2001, she returned to the Santmyer Oil Marathon store where she had been employed, and told them that she was not going to return to her position there because she wanted to be a full-time mother.[2]
 {¶ 15} In January, 2002, Appellant wrote a letter to Santmyer Oil Company, directed to Terry Santmyer, inquiring about a position as a dispatcher/office worker or an emergency on-call driver. In that letter, Appellant informed Appellees that she would be able to start work as early as February or March of 2002. By February of 2002, the earliest date that Appellant had indicated that she could begin working, Appellant had become ineligible for a driving position with Santmyer Oil Company or SOCI Petroleum, due to the fact that she had received two speeding tickets within a 30-day period, one of them carrying a 30-day suspension of her diving privileges. Appellant concedes that she was not qualified to be a truck driver in February 2002 and thereafter.
 {¶ 16} Appellant takes issue with her August application. We accept as true Appellant's statement that she submitted an application to be a truck driver with Santmyer Oil Company on August 17, 2001. As mentioned above, Appellant went on maternity leave on August 20, 2001. While Appellant was on maternity leave, Appellee never communicated any sort of rejection of her application to be a truck driver. Appellant concedes that sometime in September or October of 2001, she returned to the convenient store owned by Appellee and told them that she was not returning to work. By telling Appellee that she was not returning to work, Appellant effectively withdrew her application for further employment within Appellee's company.
 {¶ 17} We find that Appellant's application was never rejected by Appellee when she was qualified to be a truck driver, and she herself effectively withdrew her application when she communicated to Appellee that she was not returning to work. We need not engage in a discussion on whether Appellant has proven a prima facie discrimination case since she withdrew her August application, and by the time she indicated a further interest in becoming a truck driver, her driving record precluded her employment. Appellant's two assignments of error are denied.
 {¶ 18} We overrule Appellant's assignments of error and affirm the judgment of the Wayne County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J. Concurs.
[1] It is unclear whether Appellant claims that she submitted her application to Santmyer Oil Company, or to SOCI Petroleum. The companies are separate corporations with common ownership and some common management.
[2] Appellant claims that she did not state that she was quitting her employment to become a full-time mother, but rather because she wanted more money. Her employer and husband, who were there at the time, both testified that she said that she quit because she wanted to become a full-time mother. Whatever the reasons, it is undisputed that Appellant told Appellee that she was not going to return to her position.