[Cite as *Fleming v. Kent State Univ.*, 2012-Ohio-6350.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES M. FLEMING

      Plaintiff

      v.

KENT STATE UNIVERSITY

      Defendant

Case No. 2011-09365

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff brought this action against defendant, Kent State University (KSU), alleging that KSU committed a breach of his employment contract by reassigning him from his coaching position to an administrative position in February 2011.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[2]

{¶ 2} Plaintiff testified that he has been a college football coach for 27 years at ten different institutions. In March 2010, at the request of former KSU head football coach, Doug Martin, plaintiff joined the coaching staff as an assistant coach. Martin was terminated as KSU's head football coach in November 2010, and Darrell Hazell was subsequently hired as his replacement. Plaintiff testified that on January 21, 2011, Executive Associate Athletic Director, Thomas Kleinlein, informed him that he would not

---

[1]At trial, plaintiff voluntarily dismissed his claims of defamation and false light, pursuing only his claim of breach of contract.

[2]Plaintiff's July 17, 2012 "unopposed motion to extend post-trial briefing schedule" is GRANTED instanter.

be retained as an assistant coach.  At that same time, plaintiff was informed that effective February 14, 2011, he was being reassigned to a non-coaching position as an assistant to the Athletic Director within the Athletic Department.  (Plaintiff's Exhibit D.) Plaintiff, however, did not report for work.  Plaintiff testified that at this same time, KSU cancelled his courtesy vehicle.

{¶ 3} On February 18, 2011, Director of Athletics, Joel Nielsen, informed plaintiff that failure to report for work by February 21, 2011, would subject him to discipline, which could include termination of his employment.  (Plaintiff's Exhibit E.)  Plaintiff did not return to work and his employment was terminated on March 10, 2011.  Plaintiff received pay through that date.

{¶ 4} In order to recover for breach of contract, plaintiff must prove the existence of a contact, performance by plaintiff, breach by defendant, and damages or loss as a result of the breach.  *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340 (10th Dist.); *Doner v. Snapp,* 98 Ohio App.3d 597, 600 (2nd Dist.1994).

{¶ 5} The relationship between the parties is governed by plaintiff's March 2010 employment contract which provides in relevant part:

{¶ 6} "WHEREAS, Kent State University agrees that James Fleming (hereinafter referred to as "Fleming") shall be employed by Kent State University as its Football, Defensive Coordinator[3]; and

{¶ 7} "WHEREAS, the parties to this contract desire to establish terms of employment not contained in the standard university employment Contract;

{¶ 8} "NOW, THEREFORE, in consideration of the above, the parties agree as follows:

{¶ 9} "1.  The term of this Contract shall be for an initial period of **twenty-eight (28) months**, to terminate on June 30, 2012.

---

[3]The parties agree that plaintiff was hired as an assistant defensive coordinator.

{¶ 10} "2.  The initial salary beginning **March __, 2010** will be **$71,500**. * * *.

{¶ 11} " * * *

{¶ 12} "4.  A suitable automobile will be provided for **Fleming's** use consistent with the Athletic Department's Memorandum of agreement regarding automobiles, which is incorporated by reference.

{¶ 13} " * * *

{¶ 14} "6.  Subject to **Fleming's** continuing compliance with NCAA and University rules and regulations, if this party terminates this Agreement prior to **June 30, 2012** except for cause as defined in Rule 3342-09(D)(2) of the Administrative Code as contained in the University Policy Register, the initiating party shall pay to the other the agreed upon early termination cost.  If the University is the initiator, it shall pay the balance of the then in effect base salary due for the remaining term.

{¶ 15} " * * *

{¶ 16} "8.  Except for those terms contained herein to the contrary, all other conditions of this employment are contained in and controlled by any and all University and Administrative Policies and Procedures, as published in the University Policy Register, and as may be added to or amended during the period of employment consistent with **Kent State University's** Constitution and Bylaws.

{¶ 17} " * * *

{¶ 18} "13.  This is the entire Contract between the parties and no other terms exist or shall be enforceable except as agreed in writing, and executed by the parties hereto. The terms of this Agreement may be amended upon the mutual agreement of the parties."  (Plaintiff's Exhibit C.)

{¶ 19} Defendant contends that nothing in the contract prohibits KSU from reassigning plaintiff to a different position within the university and that plaintiff terminated the employment contract by failing to report for work in February 2011.

Plaintiff contends that he never would have signed a contract that allowed KSU to reassign him to a non-coaching position within the university.

{¶ 20} Contract interpretation is a matter of law for the court. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. When interpreting a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-362.

{¶ 21} The parol evidence rule is not a rule of evidence, interpretation or construction, but rather a rule of substantive law which, when applicable, defines the limits of a contract. *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, citing *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 324 (1952). The rule applies to integrated writings but does not apply to partially integrated writings. *Id; see also Miller v. Lindsay-Green, Inc.*, 10th Dist. No. 04AP-848, 2005-Ohio-6366. The rule provides that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might tend to add to, vary, or contradict the writing. *Galmish*, *supra*, at 26. However, extrinsic evidence becomes admissible to ascertain the intent of the parties when the contract is unclear or ambiguous or when circumstances surrounding the agreement give the plain language special meaning. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638.

{¶ 22} "[I]f a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.,* 15

Ohio St.3d 321, 322 (1984). In such a situation, as an exception to the parol evidence rule, the parties may introduce extrinsic evidence to supply the missing term. *McGonagle v. Somerset Gas Transmission Co.*, 10th Dist. No. 11AP-156, 2011-Ohio-5768.

{¶ 23} The court finds that the parties' agreement is silent on the issue of reassignment within the university and there is clearly no agreement regarding the missing term. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement of the Law 2d. Contracts, Section 204 (1981).

{¶ 24} Former KSU Athletic Director, Laing Kennedy, testified that as the Athletic Director, he would enter into contracts with coaches of the various sports at the university. Kennedy, a signatory to the parties 2010 contract, stated that assistant coaches typically did not have contracts with the university. Kennedy testified that plaintiff's duties are not written in the contract because they can change within the coaching staff. Kennedy explained that the particular job duties fluctuated within the job title and that a defensive coach may be reassigned to the offensive side; however, Kennedy admitted that he did not reassign coaches to non-coaching positions. Kennedy reviewed several employment contracts of various coaches at KSU and noted that head women's basketball coach, Robert Lindsay, requested an express provision prohibiting reassignment, which was subsequently added to his contract. Kennedy stated that plaintiff did not make such a request.

{¶ 25} Current athletic director, Joel Nielsen, asserted that the Athletic Director may reassign a coach to any position within the university so long as it matched the particular coaches background and experience. Nielsen testified that he reassigned plaintiff to a position as an assistant to the Athletic Director. Nielsen explained that he created the position at the time of the reassignment and that it remains unfilled. The

duties of the position include fund raising, building security, facility scheduling and maintenance, and marketing and promotion. (Defendant's Exhibit F.) According to Nielsen, plaintiff's bonuses under his contract remained in effect while he served in the newly-created position within the athletic department despite the fact that the bonuses apply to plaintiff's performance as a coach and both the athletic and academic performance of the football team.

{¶ 26} Based upon the evidence presented at trial, the court concludes that it is reasonable under the circumstances for plaintiff to anticipate reassignment within the coaching staff but that he could not reasonably anticipate reassignment to a non-coaching position in the Athletic Department. Indeed, the court is persuaded by Kennedy's testimony that reassignment of a coach to a non-coaching position was not the established practice at KSU during his tenure. Kennedy testified that KSU's expectation was for plaintiff to be a football coach. Moreover, even if the court were to accept Nielsen's testimony regarding reassignment, the court has difficulty believing the duties of the newly-created administrative position match plaintiff's background and experience. Plaintiff has been a coach for 27 years and has never held an administrative position.

{¶ 27} Defendant argues, in the alternative, that plaintiff relinquished his employment voluntarily when he refused to accept the reassignment. Plaintiff counters that his reassignment by KSU to an administrative position amounted to a constructive discharge. "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, paragraph four of the syllabus. "In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to

struggle with the inevitable simply to attain the 'discharge' label." *Id.* at 589. Conversely, "[a]n employee has an obligation not to jump to conclusions and assume that every conflict with an employer evidences a hidden intent by the employer to terminate the employment relationship. *Simpson v. Ohio Reformatory for Women,* 10th Dist. No. 02AP-588, 2003-Ohio-988, ¶ 25, citing *Jackson v. Champaign Natl. Bank & Trust Co.*, 10th Dist. No. 00AP-170 (Sept. 26, 2000).

{¶ 28} Based upon the evidence presented, the court concludes that plaintiff's reassignment from a coaching position to a non-coaching administrative position within the Athletic Department amounts to a constructive discharge. Indeed, Kennedy testified that he did not reassign coaches to non-coaching positions. Additionally, at the time of plaintiff's reassignment, KSU cancelled his courtesy car that had been provided to him pursuant to the contract. Moreover, as noted above, the duties of the newly-created administrative position do not to match plaintiff's 27 years of coaching experience and background. It is clear from the evidence at trial that KSU no longer desired plaintiff's services as a football coach. Accordingly, the court finds that plaintiff's reassignment amounted to a constructive discharge and that a reasonable person would have felt compelled to resign.

{¶ 29} For the foregoing reasons, the court finds that KSU violated the terms of the contract and, accordingly, judgment shall be rendered in favor of plaintiff.[4]

---

[4]Defendant's argument that the contract's liquidated damages clause is an unenforceable penalty clause shall be addressed during the damages phase of the trial.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JAMES M. FLEMING

    Plaintiff

    v.

KENT STATE UNIVERSITY

    Defendant

Case No. 2011-09365

Judge Joseph T. Clark

## JUDGMENT ENTRY

{¶ 30} This case was tried to the court on the issue of liability. The court has considered the evidence, and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff on his claim of breach of contract. A case management conference is set for *November 9, 2012, at 9:30 a.m.,* to discuss further proceedings. The court shall initiate the conference via telephone.

_____
JOSEPH T. CLARK
Judge

cc:

Christopher P. Conomy
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

John F. Myers
697 West Market Street, Suite 102
Akron, Ohio 44303

003
Filed October 29, 2012
Sent to S.C. Reporter February 28, 2013