DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued in favor of a governmental landlord and its contracted public security agencies in a wrongful death suit. Because we conclude that this ruling was proper, we affirm.
 {¶ 2} Appellant is Thomas Pieper, administrator of the estate of Velma MacDowell. In 1999, 88 year old MacDowell lived in Glendale Terrace, a residential complex for senior citizens owned and operated by appellee Lucas [County] Metropolitan Housing Authority ("LMHA"). At that time, LMHA had in place contracts with appellee city of Toledo Police Division and appellee Lucas County Sheriff's Department to provide security for all of LMHA's property throughout metropolitan Toledo, including Glendale Terrace.
 {¶ 3} Robert S. Williams, Jr.'s mother lived in Glendale Terrace. Williams was acquainted with Tony Presnell. Presnell, confined to a wheelchair, lives in Glendale Terrace with his mother.
 {¶ 4} On the evening of February 17, 1999, Williams and Presnell visited a bar. The two had a pitcher of beer, for which Presnell paid because Williams had no money. The two then returned to Presnell's apartment. Williams stayed for a short while, then left. He returned some time later with several hundred dollars.
 {¶ 5} On the morning of February 18, 1999, Velma MacDowell's sister found her dead in her apartment. The death was originally believed to be of natural causes, but upon examination a deputy coroner found ligature marks on MacDowell's neck and a piece of cloth stuffed down her throat. There was also evidence of sexual penetration.
 {¶ 6} Police found forensic evidence linking Williams to MacDowell's death. Williams was charged and later convicted of aggravated murder, rape, aggravated robbery, and aggravated burglary. He was sentenced to death. State v. Williams,99 Ohio St.3d 439, 2003-Ohio-4164.
 {¶ 7} In 2002, on behalf of MacDowell's estate, appellant sued, inter alia, Williams, LMHA, the city of Toledo, the Toledo Police Department and Lucas County Sheriff James Telb in his official capacity. In a multiple count complaint, appellant asserted wrongful death and survivorship claims against LMHA, Toledo and the Toledo police, alleging negligence and gross negligence and reckless and wanton conduct with respect to providing security at Glendale Terrace. Appellant also alleged that the Toledo police and Sheriff Telb breached a contract to provide security to LMHA and that MacDowell was a third party beneficiary to these contracts, the breach of which resulted in her death.
 {¶ 8} Appellees answered appellant's complaint, denying negligence and raising numerous defenses. Following extensive discovery and motion practice, appellees moved for and were granted summary judgment. From this judgment, appellant now brings this appeal, pursuant to Civ.R. 54(B). Appellant sets forth the following five assignments of error:
 {¶ 9} "Assignment of Error Number 1
 {¶ 10} "The court erred in granting summary judgement for appellee's defendant's [sic]
 {¶ 11} "Assignment of Error Number 2
 {¶ 12} "The court erred in granting appellants' appellees [sic] motion to strike plaintiff's affidavit of Arthur Marx
 {¶ 13} "Assignment of Error Number 3
 {¶ 14} "The court erred in denying appellants' requested to [sic] judicial notice
 {¶ 15} "Assignment of Error Number 4
 {¶ 16} "The court errored [sic] in denying plaintiffs' (appellant [sic] motion) relative to the introduction of new evidence on rebuttal filing relative to defendants' summary judgment.
 {¶ 17} "Assignment of Error No. 5
 {¶ 18} "It was error for the court to grant summary judgment for defendants' holding defendants immune under Ohio immunity laws [sic]"
 {¶ 19} In a motion decision accompanying its award of summary judgment, the trial court struck a large number of the documents filed by both appellant and appellees, including nearly all of the affidavit of appellant's security expert, Arthur Marx. On the record that remained, the court concluded that appellant had failed to come forward with evidence sufficient to create a question of fact as to the negligence or contract breach of any of appellees. Additionally, in a 59 page opinion, the court examined all of the documents submitted, including those stricken, and concluded that the result would have been no different had the disputed documents been accepted. Moreover, the court found each of the public entities was entitled to immunity from suit.
 {¶ 20} We shall reserve discussion of appellant's first assignment of error.
 I. Stricken Affidavit {¶ 21} In the trial court, appellees moved for summary judgment, asserting that appellant could show no set of facts constituting negligence or, alternatively, if negligence could be shown, they were entitled to immunity from judgment. Appellee responded with a lengthy memorandum in opposition to appellant's motion supported by numerous documents, including the affidavit of former Toledo Police Officer Arthur Marx.
 {¶ 22} Based upon numerous interviews with Glendale Terrace residents and the examination of the affidavits of others, Marx concluded that LMHA, the city of Toledo police, and the Lucas County sheriff had a contractual obligation to patrol Glendale Terrance and to identify and interdict suspicious individuals who might harm residents. Moreover, Marx opined, had these parties adequately performed their duties, Velma MacDowell would not have been raped and murdered.
 {¶ 23} Appellee LMHA and Toledo police moved to strike Marx's affidavit, asserting that it contained unsupported conclusory statements and did not put forth facts submitted in evidence or affirmatively establish the affiant's competency, pursuant to Civ.R. 56(E). The trial court examined the Marx affidavit paragraph by paragraph, striking nearly the entire document. In his second assignment of error, appellant asserts that this ruling was erroneous.
 {¶ 24} The character of the material necessary to support or defend a summary judgment motion is defined by Civ.R. 56(E). The rule provides:
 {¶ 25} "(E) Form of affidavits; further testimony; defenserequired. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."
 {¶ 26} Material inconsistent with the rule may, on motion, be stricken from the record. The decision as to whether to grant or deny such a motion rests in the sound discretion of the court and will not be overturned on appeal absent an abuse of that discretion. Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770,777, 2003-Ohio-5340, at ¶ 17. An abuse of discretion is more than an error of law or mistake of judgment, the term implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 27} In this matter, the trial court concluded that Marx had failed to qualify to offer expert opinion because his resume and curriculum vitae initially were not attached to his affidavit and, when later filed, were unauthenticated as required by Civ.R. 54(E) and Evid.R. 702. See Hall v. Fairmont Homes Inc. (1995),105 Ohio App.3d 424, 434. Thus, the court struck those portions of the Marx affidavit offering expert opinion.
 {¶ 28} Additionally, the court found that many of the documents relied upon by Marx were not filed with the court, not properly authenticated, or were so vaguely identified as to render reliance upon them improper, pursuant to Civ.R. 56(E). The court struck affidavit references derived from these documents.
 {¶ 29} Appellant does not address the lack of authentication of Marx's resume or curriculum vitae. Instead, he argues that, because the court's order on the motion to strike does not refer to specific paragraphs to be stricken, it was erroneous.
 {¶ 30} Civ.R. 54(E) requires that sworn or certified copies of all papers referred to in an affidavit be attached or served with the affidavit. Thus, when Marx wished to establish his expertise as a security consultant, he relied upon his resume and curriculum vitae which were initially not attached to his resume. When he eventually did submit these documents, they were not sworn to or certified as required by the rule. See State ex rel.Corrigan v. Seminatore (1981), 66 Ohio St.2d 459, 467-468. Absent properly verified credentials, the court was well within its discretion in refusing to permit Marx to offer expert opinion. With respect to the specificity of this order, it is certainly sufficient to permit legal discernment of its topic. Accordingly, appellant's second assignment of error is not well-taken.
 II. Judicial Notice {¶ 31} In his third assignment of error, appellant maintains that the trial court erred in partially denying his request that the court take judicial notice of certain adjudicative facts.
 {¶ 32} Appellant requested judicial notice of numerous adjudicative facts. On appeal, he asserts that the court's denial of the following five of these was an abuse of discretion:
 {¶ 33} "Request 5 — Defendant is a municipal corporation in Ohio and provides police services for its residents or other entities as a governmental function and whenever a municipal corporation enters a contract for consideration for police protection to residents or entity over and above those available to the public, the contracted services become a non-governmental function.
 {¶ 34} "Request 6 — There is no statutory or legal authority in Ohio that permits a municipal corporation to provide police services in a community for a charge aside from authorized taxes generated by the municipal corporation.
 {¶ 35} "Request 7 — A municipal corporation cannot provide for compensation beyond taxes additional police protection to selected residents or entities of a community over and above those mandated by law; if it does so, the services constitute a non-governmental function.
 {¶ 36} "Request 8 — The provision of housing for individuals by any governmental entity is a non-governmental or a proprietary function.
 {¶ 37} "* * *
 {¶ 38} "Request 10 — City of Toledo police officers perform security work for individuals for private entities as a private non-governmental function."
 {¶ 39} A court may take judicial notice of certain facts if such facts are properly brought to the court's attention. Civ.R. 44.1. Judicial notice of adjudicative facts is governed by Evid.R. 201. The scope of that which may be noticed is highly circumscribed. A court may only take judicial notice of a fact if it is, "* * * one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B).
 {¶ 40} The trial court found that the adjudicative facts contained in the request not only could be, but were reasonably being disputed by appellees. The trial court's determination was proper. The thrust of each of the proposed adjudicative facts is an assertion of a particular proposition of law, each subject to interpretation and argument. As such, they may hardly be characterized as generally known or readily determinable. Accordingly, appellant's third assignment of error is not well-taken.
 III. Motion in Limine {¶ 41} Following appellee's summary judgment motion, appellant filed a "motion in limine" to prevent appellees from presenting, "* * * new evidence or affidavits relative to [appellees'] motion for summary judgment." The basis for this motion, appellant asserted, was, "* * * that the local rules of the court of the Common Pleas Court, [sic] as well as Civil Rule 56, do not permit new evidence or rebuttal in summary judgment motions."
 {¶ 42} In ruling on this motion, the trial court properly noted that a motion in limine is designed to prevent irrelevant or inadmissible material which is potentially prejudicial from being introduced at trial. Reinhart v. Toledo Blade Co. (1985),21 Ohio App.3d 274, 278. It is an interlocutory device by which a party moves to limit the presentation of evidence during trial until its admissibility may be ascertained within the context of the trial. See Riverside Methodist Hosp. Assn. v. Guthrie
(1982), 3 Ohio App.3d 308, 310. The key word, as the trial court noted, is "trial." A motion in limine is antithetical in a summary judgment context.
 {¶ 43} On appeal, appellant insists that the trial court should have ignored the caption of his motion and addressed its substance, which was to bar appellee from presenting additional evidence on rebuttal.
 {¶ 44} On appeal, appellant provides even less authority in support of his motion than was presented before the trial court. Appellant does not reveal the local rule upon which he relies and he directs us to no specific case or language from Civ.R. 56 in support. Consequently, whether addressing the caption of his motion or the substance, the trial court did not err in denying the motion. Accordingly, appellant's fourth assignment of error is not well-taken.
 IV. Summary Judgment {¶ 45} In his first assignment of error, appellant contends that the trial court erred in granting summary judgment to appellee.
 {¶ 46} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 47} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67; Civ.R. 56(C).
 {¶ 48} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 A. Negligence {¶ 49} Appellant maintains that it was the negligence of appellees that caused Velma MacDowell's death. For a party to demonstrate actionable negligence, he or she must show that there existed a duty from the defendant to the plaintiff, the breach of which proximately caused the plaintiff's injury. Mussivand v.David (1989), 45 Ohio St.3d 314, 318. At common law, the duty of care toward another is that the degree of care which an ordinary, reasonable and prudent person exercises under the same or similar circumstances. Id.
 {¶ 50} Beyond this, Ohio statutorily prescribes a more rigid standard to prevail in a wrongful death claim against a landlord. In material part, R.C. 2151.01 provides:
 {¶ 51} "* * * No action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the violent unprovoked act of a party other than the owner, lessee, or a person under the control of the owner or lessee, unless the acts or omissions of the owner, lessee, or person under the control of the owner or lessee constitute gross negligence."
 {¶ 52} "Gross negligence" has been defined as "the want or absence of slight care and diligence," Monnin v. Fifth ThirdBank of Miami Valley (1995), 103 Ohio App.3d 213, 228, but there has long been dispute over the term's exact characterization. SeePayne v. Vance (1921), 103 Ohio St. 59, 66; see, also, Keeton, Prosser and Keeton on Torts (5ed 1984), 211-212 ("There is, in short, no generally accepted meaning; but the probability is * * * that it signifies more than ordinary inadvertence or inattention, but less perhaps than conscious indifference to the consequences.")
 {¶ 53} Moreover, while, in Ohio, landlords have a duty to take reasonable precautions to provide reasonable security for tenants, they are not insurers against criminal activity.Carmichael v. Colonial Square Apts. (1987), 38 Ohio App.3d 131,132; Sciascia v. Riverpark Apts. (1981), 3 Ohio App.3d 164,166. It is only when the circumstances demonstrate that the landlord could have reasonably foreseen a criminal act directed at a tenant, could have prevented the tenant's injury by providing reasonably secure premises and the harm to the tenant was proximately caused by the landlord's failure to take preventative measures does liability attach. Johnson v. Spectrumof Supportive Serv., 8th Dist. No. 82267, 2003-Ohio-4404, at ¶ 18. There is foreseeability when a reasonably prudent person would have anticipated that injury was likely to result from the performance or nonperformance of an act. Id. at ¶ 19. Without such foreseeability, there is no duty. Jeffers v. Olexo (1989),43 Ohio St.3d 140, syllabus.
 {¶ 54} In his complaint, appellant charged appellees failed to prevent trespassers from entering Glendale Terrace, failed to repair a locked door to the outside, did not provide adequate security patrols, failed to secure the property from nonresidents, did not screen visitors for violent tendencies and did not instruct residents as to personal safety.
 {¶ 55} In this matter, it is unrefuted that this is the first incidence of violent crime directed at a tenant to have ever occurred at Glendale Terrace. Appellant has presented no evidence that the complex is in a particularly crime ridden location or any other fact by which a reasonable landlord could have foreseen an attack on one of its residents. Absent such foreseeability of an incident, LMHA had no duty to provide extraordinary measures against an unknown threat. Without a duty, a suit in negligence cannot be maintained against LMHA as a matter of law. With respect to repairing a broken lock, a landlord does have a duty to provide reasonable maintenance, but there is nothing in the record to suggest that a broken lock was in any way the proximate cause of Velma MacDowell's death. Since LMHA is not negligent as a matter of law, any discussion of immunities is superfluous.
 {¶ 56} With respect to appellee police agencies, while such agencies owe a duty to the public when performing their functions, they are not liable to specific individuals, absent a special duty owed to an individual. Wallace v. Ohio Dept. ofCommerce, 96 Ohio St.3d 266, 270, 2002-Ohio-4210, at ¶ 13. "In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." Sawicki v. Village of Ottawa Hills (1988),37 Ohio St.3d 222, at paragraph 4 of the syllabus.
 {¶ 57} Appellant has simply failed to present any evidence that any of the elements needed to give rise to a special duty by which any liability in negligence could be imposed. Consequently, appellees Lucas County Sheriff and the Toledo police are entitled to judgment as a matter of law on the negligence issue.
 B. Contract {¶ 58} LMHA entered into contracts with the Lucas County Sheriff's Department and the Toledo Police Division for extra security at LMHA's housing complexes. These contracts called for the police agencies to provide extra patrols to LMHA's properties and instruct LMHA residents as to personal safety. The trial court found that Velma MacDowell was a third party beneficiary to these agreements.
 {¶ 59} Appellant insists that these police agencies did not provide extra patrols to Glendale Terrace and did not instruct Glendale Terrace residents as to how they might protect their personal safety. This breach, according to appellant, led to Velma MacDowell's rape and murder.
 {¶ 60} As the trial court noted in its decision, there is nothing in the contracts between LMHA and the police agencies which specifically designates Glendale Terrace as a location due extra patrols or security instruction. Indeed, these contracts enumerate no specific LMHA facilities to which services are to be provided. The preface of the LMHA contract with the city recites only that the purpose of the contract is to "* * * create a drug and crime-free environment and to provide for the safety and protection of the residents of * * * public housing * * *." This is a general aspiration without any specific directive. Without an agreed upon specific duty, it cannot be said that such a duty was breached.
 {¶ 61} Accordingly, the trial court did not err in granting summary judgment to appellee. Appellant's first assignment of error is not well-taken.
 IV. Immunity {¶ 62} Because we have concluded that appellees were entitled to summary judgment in negligence, the issue of immunity is moot. Accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 63} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J. Parish, J. Concur.